### RODGERS v. UNITED STATES.
### No. 9462.

Circuit Court of Appeals, Sixth Circuit.
Dec. 1, 1943.

Charles A. Rond, of Memphis, Tenn., for appellant.

R. G. Draper, of Memphis, Tenn., and W. Carroll Hunter, of Washington, D.C. (William McClanahan, of Memphis, Tenn., and John S. L. Yost, W. Carroll Hunter,

994

and David P. Gordon, all of Washington, D.C., on the brief), for appellee.

Before HAMILTON, MARTIN, and McALLISTER, Circuit Judges.

HAMILTON, Circuit Judge.

Appellant, a producer of cotton, seeks to reverse a judgment which mandatorily required him to file certain farm operator's reports pursuant to the cotton marketing quota provisions of the Agricultural Adjustment Act of 1938, 52 Stat. 31, as amended, Title 7 U.S.C.A. § 1281 et seq., and the regulations of the Secretary of Agriculture issued thereunder. The judgment also awarded the United States $3,-123.65, the sum it claimed was due the United States by reason of the cultivation and sale of cotton by appellant in excess of marketing quotas established under the Act.

During the crop years 1938, 1939 and 1940, appellant was engaged in operating cotton farms in Tunica County, Mississippi. Under the provisions of the Agricultural Adjustment Act, cotton acreage allotments were established for appellant's farms for each of the crop years. Appellant marketed 826 pounds of cotton in excess of his quotas for the year 1938–1939, 92,719 pounds for the year 1939–1940 and 10,952 pounds for the year 1940–1941. On account of these excess sales, appellant became liable for the sanctions under Section 348 of the Act 7 U.S.C.A. § 1348, in the sum of $3,123.65. The amount of the sanctions was determined for the crop year 1938–1939 through farm operator's reports made by appellant. Appellant refused to file any report for the crop year 1939–1940 and refused to file a complete report for the year 1940–1941.

■■ Appellant contends that the provisions of the Act invade the rights and powers reserved to the several states in violation of the Tenth Amendment to the Constitution and that the provisions of Section 372, 7 U.S.C.A. § 1372, unlawfully delegate to the Secretary of Agriculture the legislative and taxing powers of the government. These contentions are rejected on the authority of Wickard v. Filburn, 317 U.S. 111, 133, 63 S.Ct. 82, 87 L. Ed. ——.

Appellant also contends that the so-called penalty imposed by Section 348 of the Act, 7 U.S.C.A. § 1348, is in reality a direct tax not levied in proportion to the census or enumeration as required under Article 1, Sections 2 and 9 and Clauses 3 and 4 of the Constitution.

The section of the Act in question provides in substance that any farmer who markets cotton in excess of his farm quota shall be subject to penalties measured at a rate per pound.

The premise of appellant's contention is that the Agricultural Adjustment Act construed in the light of Wickard v. Filburn, supra, is an exercise of congressional taxing power to control the farmer in the production of cotton and that in view of the fact that under the Act a grower of cotton is not prohibited from planting more cotton than his allotment, nor forbidden to sell such excess cotton, the exaction of three cents per pound imposed on the farmer runs afoul of Article 1, Sections 2 and 9 and Clauses 3 and 4 of the Constitution.

■■ On this point we start off with the settled principle that the Act here in question, under the case of Wickard v. Filburn, supra, is an exercise of the power of Congress to regulate commerce. The imposition of a sanction of three cents a pound as a prerequisite to the right of the farmer to market excess cotton under the terms and purposes of the statute involved is not the levying of a tax under the government's taxing power, but a method adopted by the Congress for the express purpose of regulating the production of cotton affecting interstate commerce. The test to be applied is to view the objects and purposes of the statute as a whole and if from such examination it is concluded that revenue is the primary purpose and regulation merely incidental, the imposition is a tax and is controlled by the taxing provisions of the Constitution. Conversely, if regulation is the primary purpose of the statute, the mere fact that incidentally revenue is also obtained does not make the imposition a tax, but a sanction imposed for the purpose of making effective the congressional enactment.

■■ There is a marked distinction between taxation for revenue, as authorized and limited by Article 1, Sections 2 and 9 and Clauses 3 and 4 of the Constitution, and the imposition of sanctions by the Congress under the commerce clause. The power of Congress to "regulate commerce" is the power to prescribe the rules by which commerce is to be governed and the Congress is at liberty to adopt any method which it deems effective to accomplish the permitted end. Congress has a discretion

as to what sanctions shall be imposed for the enforcement of the law and this discretion is unlimited so long as the method of enforcement does not impinge upon some other constitutional prohibition. Sunshine Anthracite Coal Company v. Adkins, 310 U.S. 381, 393, 60 S.Ct. 907, 84 L.Ed. 1263; United States v. Darby, 312 U.S. 100, 124, 657, 61 S.Ct. 451, 85 L.Ed. 609, 132 A.L.R. 1430.

■ Taxation is a congressional power specifically mentioned and described in the Constitution, but always in connection with the subject of the revenue for the support of the government generally, or some particular branch of it, and it is in such connection that we find the requirement that capitation or other direct taxes are only to be paid in proportion to the census or enumeration. Article 1, Sec. 9, Clause 4. This being so, we think that the constitutional limitation on which appellant relies relates solely to taxation generally for the purpose of revenue only, and not impositions made incidentally under the commerce clause exerted either directly or by delegation, as a means of constraining and regulating what may be considered by the Congress as pernicious or harmful to commerce.

■ The imposition with which we are here concerned has for its object the fostering, protecting and conserving of interstate commerce and the prevention of harm to the people from its flow. It is not a charge on property for the purpose of raising revenue. Revenue may incidentally arise therefrom, but that fact does not divest the regulation of its commerce character and render it an exercise of the taxing power. Head Money Cases (Edye v. Robertson), 112 U.S. 580, 595, 5 S.Ct. 247, 28 L.Ed. 798.

It is true that the Supreme Court in the case of Pollock v. Farmers' Loan & Trust Company, 158 U.S. 601, 15 S.Ct. 912, 39 L.Ed. 1108, decided that every imposition on lands or the income therefrom, or the products thereof, in any form, even when any one of them reached the status of personal property, was a direct tax and must be taxed according to Article 1, Sections 2 and 9 and Clauses 3 and 4 of the Constitution, but the court was there dealing with a statute which had for its primary purpose the raising of revenue and had nothing to do with the regulation of commerce. This case, on which appellant strongly relies in support of his contention, has no application to the present statute.

Section 373(b) of the Act, 52 Stat. 65, 7 U.S.C.A. § 1373, provides that farmers engaged in production of cotton for market shall furnish such proof of their acreage yield, storage and marketing of the commodity in the form of records as the Secretary of Agriculture may prescribe. Section 375(a) of the Act, 52 Stat. 66, 7 U.S.C.A. § 1375, requires the Secretary of Agriculture to provide by regulation for the identification of cotton so as to afford aid in discovering and identifying such cotton as is subject to, or excluded from, the marketing restrictions of the Act. Under regulations issued pursuant to the Act, the farmer is required to report on forms promulgated by the Secretary of Agriculture the necessary data from which can be determined the sanction imposed for marketing excess cotton quotas.

Appellant contends that the sanctions provided under the Act, if not taxes, are penalties and that to require appellant to make reports from which the alleged penalties could be ascertained would compel him "to be a witness against himself" contrary to the Fifth Amendment. We find it unnecessary to discuss the nomenclature of the Act.

It will be noted that the Act and the regulations are applicable to all farmers who produce cotton. No sanctions fall on the reporting farmer unless he markets cotton in excess of the quota. The sanctions which may be characterized as penalties for the purpose of decision may not arise in most instances out of the facts disclosed in the report.

■ Since Congress may, under the Act, restrict the amount of cotton produced and marketed by the farmer without the payment of sanctions, it follows that it may require the farmer, as a means of enforcing the valid law, to keep records showing whether he has in fact complied with the Act and remained within the quota, exempt of sanctions or subject thereto. United States v. Darby, 312 U.S. 100, 125, 657, 61 S.Ct. 451, 85 L.Ed. 609, 132 A.L.R. 1430.

■ The constitutional privilege against self-incrimination is not all-inclusive. There is excluded therefrom papers, records and reports required by law to be kept and made in order that suitable information may be obtained of transactions which are appropriate subjects of governmental regulations.

996

The records and reports required by the statute and regulations here in question are quasi-public documents and not for appellant's private use. They are for the benefit of the public and are open to inspection by such persons and officers as are authorized under the statute to inspect them. Wilson v. United States, 221 U.S. 361, 382, 31 S.Ct. 538, 55 L.Ed. 771, Ann. Cas.1912D, 558.

The rule laid down in the case of Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 528, 29 L.Ed. 746, is not applicable here. That case was a forfeiture proceeding of goods under the Customs Act of June 22, 1874, c. 391, 18 Stat. 187. The court there decided that the enforced production of the "private books and papers" of the owners of the goods sought to be forfeited was violative of the Fourth Amendment. The Act there in question provided that in revenue cases, on motion of government attorneys, the defendant or claimant could be required to produce in court his private books, invoices and papers and if he refused, the allegations of the government were to be taken as confessed.

It will be noted that the cited case referred to the private papers of the defendant and had no reference to records required under the statute to be kept by him. The rule laid down in the Boyd case is carefully differentiated in the Wilson case from the rule applicable here.

Unless the distinction between private records and papers and quasi-public records and papers is kept in mind in applying the Fourth Amendment, it will be difficult to regulate business subject to congressional intervention under the Constitution. To relieve those engaged in business subject to public regulation of the obligation to keep records and make reports would place an unnecessary burden on the government and extend to individuals an immunity not within the concept of the constitutional prohibition against self-incrimination. Di Santo v. United States, 6 Cir., 93 F.2d 948.

Persons to whom the Act and regulations here in question are applicable are advised, in advance of the necessity of making reports and entries on their books and that such records and reports are to be used primarily for the enforcement of the statute.

The keeping of records and the making of reports under the statute of which appellant complains have none of the characteristics of entrapment, invasion of the right of privacy or unjust coercion of individuals, which are the genesis of the Fourth Amendment. The so-called penalties under the present Act are merely incidental to the reports. They are not imposed for failure to make the reports. Wigmore on Evidence, 3rd ed., Sec. 2259 (c).

Judgment affirmed.