**BOWLES, Administrator, O. P. A., v. JOSEPH DENUNZIO FRUIT CO.**

No. 678.

District Court, W. D. Kentucky, Louisville Division.

May 3, 1944.

---

[3] Cf. cases cited under footnote 1 in this opinion.

Raymond C. Stephenson, of Louisville, Ky., Fritz Krueger, of Mt. Vernon, and Fred J. Karem, of Louisville, Ky., for plaintiff.

Jos. G. Sachs, Jr., of Louisville, Ky., for defendant.

MILLER, District Judge.

This action was brought by the plaintiff, Chester Bowles, as Administrator of the Office of Price Administration, to recover of the defendant, Joseph Denunzio Fruit Company, $30,294.63, being treble the amount by which sales by the defendant exceeded maximum prices provided by the Maximum Price Regulations under the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix, § 901 et seq. The transactions complained of were sales of oranges, lemons, cabbages and onions during the period of June 1, 1943, through November 13, 1943. The defendant has filed its motion to suppress documentary evidence obtained by representatives of the plaintiff from the books and records of the defendant company, and also its motion to dismiss the complaint for failure to state a cause of action in favor of the plaintiff.

The defendant is a large wholesale dealer in fruits and vegetables in Louisville, Kentucky, handling approximately one hundred different articles, practically all of which were subject to ceiling prices. During the period in question its volume of sales totaled approximately $2,000,000. The policy of the company has been full cooperation with the Office of Price Administration, but due to some difficulty in correctly interpreting the OPA regulations and because of erroneous advice furnished by a trade association it made approximately 10,000 sales in the period under consideration in violation of maximum prices, which totaled excess charges of approximately $10,000. Many of these sales in wholesale lots were only a few cents in excess of the ceiling price, and the average excess charge was approximately $1. During October and the first part of November 1943 the OPA office in Louisville received a number of complaints from retailers respecting defendant's excess charges on oranges, lemons, cabbages and onions, following which it ordered an investigation of the defendant's records pertaining to its sales of these four articles. On or about November 16, 1943, its representative called at the defendant's place of business and asked one of the vice presidents for the company's invoices and records for the purpose of checking. The officer turned over the files to him without objection of any kind on his part, and also furnished the agent space in which to work, merely requesting him to finish his investigation as promptly as possible as the company's auditors needed the space involved. The officers of the defendant company conferred with each other about the matter and while one or more of them individually had some question as to the right of

the OPA representative to make the investigation which he was making, yet the result of the conference was a decision to cooperate with the OPA and to furnish its representative what information he requested. This investigation, which was extensive and in detail, produced the violations complained of in this action. Some time in June 1943, some five months prior to this investigation, a representative of the OPA had called at the defendant's office, presented his credentials and requested its sales records of cabbage on certain dates prior thereto. This representative had stated at that time that the purpose of his visit was to establish ceiling prices. His visit at that time lasted only one and one-half days. When the OPA representative called in November, 1943, he did not state that he was there to obtain information for the purpose of establishing ceiling prices. He made no statement at all as to the purpose of his visit and gave no answer to a question addressed to him by one of the officers inquiring if there was any complaint against the defendant company. However, an answer to the inquiry was not pressed for, the representative was not asked to leave, and no objection was made to his continuing the investigation to its conclusion. Following the filing of the action on February 9, 1944, the defendant filed its present motion to suppress the information thus obtained and to require the plaintiff to return to it any papers taken by it and any copies, notes or memoranda made thereof on the ground that it had been obtained in violation of the defendant's rights under the Fourth Amendment to the Constitution of the United States.

The Fourth Amendment to the Federal Constitution provides in part that "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." It is settled that this constitutional immunity can be claimed by a corporation as well as by an individual. Silverthorne Lumber Co. v. United States, 251 U.S. 385, 392, 40 S.Ct. 182, 64 L.Ed. 319, 24 A.L.R. 1426. In support of its contention that its rights under this provision of the Constitution were violated, the defendant relies upon the decisions in Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652, L.R.A.1915B, 834, Ann.Cas.1915C, 1177; Gouled v. United States, 255 U.S. 298, 41 S.Ct. 261, 65

L.Ed. 647; Federal Trade Commission v. American Tobacco Co., 264 U.S. 298, 44 S.Ct. 336, 68 L.Ed. 696, 32 A.L.R. 786; Go-Bart Importing Co. v. United States, 282 U.S. 344, 51 S.Ct. 153, 158, 75 L.Ed. 374, and other decisions of like import. Those cases are all striking examples of unreasonable searches and the ruling in each instance to the effect that evidence so obtained could not be used is sound. But the facts in each case go far beyond the facts in the present case. In the Weeks case, a United States marshal went to the defendant's home while the defendant was under arrest elsewhere, obtained the key, entered the house, searched the defendant's room, and took possession of various private papers belonging to the defendant. All of this was done without a search warrant and in the absence of the defendant. In the Gouled case, an agent of the Government pretending to make a friendly call upon the defendant with whom he was acquainted gained admission to his office and in his absence, without warrant of any character, seized and carried away the documents in question. In the Go-Bart Importing Co. case prohibition agents acting under color of an invalid warrant of arrest, and falsely claiming to have a search warrant, entered the office of the company, placed two of its officers under arrest, and made a general search of the premises. They took keys from one of the officers and by threat of force compelled him to open a desk and safe which they searched and from which they took papers and other documents. Unquestionably, the ruling in each case that the search and seizure was an unreasonable one under the circumstances there involved was correct. But those decisions expressly recognize that the protection of the Fourth Amendment is against only such searches and seizures as are "unreasonable," and as was pointed out in the Go-Bart Co. opinion "There is no formula for the determination of reasonableness. Each case is to be decided on its own facts and circumstances." In the present case the records were turned over voluntarily by the defendant's officer to the OPA representative who made his examination of them in the defendant's presence and with its consent. It is well settled that a search and seizure by Federal officers which is consented to is not an unreasonable one within the provisions of the Fourth Amendment. The right to protection against unreasonable searches and

seizure is a personal one which can be waived. Perlman v. United States, 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed. 950; Gatterdam v. United States, 6 Cir., 5 F.2d 673; Schutte v. United States, 6 Cir., 21 F.2d 830; Huhman v. United States, 8 Cir., 42 F.2d 733; A. Guckenheimer & Bros. Co. v. United States, 3 Cir., 3 F.2d 786; Bilodeau v. United States, 9 Cir., 14 F.2d 582; Cantrell v. United States, 5 Cir., 15 F.2d 953. Attention is particularly called to the facts in Gatterdam v. United States, supra, a case from this Circuit, where the facts held to constitute a waiver were much weaker than the facts which are relied upon as a waiver in this case. Under the authorities above cited it seems clear that the defendant voluntarily waived any right which it might have had to object to the inspection of its records and the making of copies thereof by the representative of the OPA.

■ In the American Tobacco Co. case the Federal Trade Commission sought writs of mandamus to require the production of records, contracts, memoranda and correspondence for inspection and making copies with reference to the possible existence of violations of Section 5 of the Federal Trade Commission Act, 15 U.S.C.A. § 45. The Court held that the right of access to documentary evidence given by Section 9 of the Act, 15 U.S.C.A. § 49, was restricted to such documents as were evidence and did not authorize a governmental fishing expedition into the papers of a private corporation on the possibility that they might disclose evidence of crime. The Court suggested that any statute which purported to allow a search through all the records of a private corporation, relevant or irrelevant, in the hope that something would turn up would probably be unconstitutional as conflicting with the Fourth Amendment. In this case the investigation now complained of was in no sense a governmental fishing expedition. Actual charges were pending against the defendant. The investigation was directed to those specific charges and to the specific invoices and papers that related to those transactions. It was authorized by an act of Congress. Section 202(b) of The Emergency Price Control Act of 1942. A reasonable examination of the books of a corporation whose activities are subject to congressional regulation, when duly authorized by an act of Congress, does not constitute an unreasonable search and seizure within the Fourth Amendment. Hale v. Henkel, 201 U.S. 43, 74–77, 26 S.Ct. 370, 50 L.Ed. 652; Essgee Co. of China v. United States, 262 U.S. 151, 155–157, 43 S.Ct. 514, 67 L.Ed. 917; Fleming v. Montgomery Ward & Co., 7 Cir., 114 F.2d 384, 389. See Securities and Exchange Commission v. Bourbon Sales Corp., D.C. W.D.Ky., 47 F.Supp. 70.

■ Irrespective of the foregoing aspect of the case defendant's contention appears untenable for another and a different reason. Section 202(b) of The Emergency Price Control Act of 1942, Section 922(b), Title 50, Appendix, U.S.C.A., provides that the Price Administrator is authorized to require any person who is engaged in the business of dealing with any commodity covered by the Act "to make and keep records and other documents, and to make reports, and he may require any such person to permit the inspection and copying of records and other documents." Pursuant to this authority the Administrator issued regulations with record keeping provisions therein requiring persons subject to the regulation to preserve for examination by the Office of Price Administration the invoices, sales tickets, cash receipts and other written evidences of sales. Such records and reports so required by statute and regulations thereunder are quasi-public documents and not for private use. They are open to inspection by such persons and officers as are authorized under the statute to inspect them and do not come within the immunity provided to private papers by the Fourth Amendment to the Federal Constitution. Rodgers v. United States, 6 Cir., 138 F.2d 992, 996; C. M. Spring Drug Co. v. United States, 8 Cir., 12 F.2d 852, 857. See also Fleming v. Montgomery Ward & Co., 7 Cir., 114 F.2d 384.

The defendant has also referred us to the opinion of the District Court for the Southern District of California in Brown v. Glick Bros. Lumber Co., 52 F.Supp. 913, in which the Court sustained a motion to suppress and return the evidence obtained by OPA investigators from an examination of the defendant's books and records. However, that opinion discusses the matter very briefly and generally. It fails to discuss or to even mention the fact that such records might properly be construed as quasi-public records, as was held in Rodgers v. United States, supra. It likewise fails to state any facts pertaining to the manner in which the investigator gained access to the records, and according-

ly gives no consideration to the question of waiver by the defendant of its rights under the Fourth Amendment. In any event, any conflict between it and the two decisions of the Circuit Court of Appeals from this Circuit in Gatterdam v. United States, supra, and Rodgers v. United States, supra, must be decided in favor of such decisions from our own Circuit Court of Appeals.

Defendant's motion to dismiss the complaint is based upon the contention that any cause of action under the Emergency Price Control Act of 1942 runs in favor of the purchaser rather than in favor of the Price Administrator. Here reliance is again placed upon the decision in Brown v. Glick Bros. Lumber Co., supra, in which case the District Court sustained a motion to dismiss based upon similar grounds. The right of action being enforced herein is conferred by Section 205(e) of the Emergency Price Control Act of 1942, Section 925(e) Title 50, Appendix, U.S.C.A. It places the right of action in the person who buys the commodity "for use or consumption other than in the course of trade or business," and then provides that if the buyer is not entitled to bring the action "the Administrator may bring such action under this subsection on behalf of the United States." The provision is in no way ambiguous and needs no judicial construction to ascertain its meaning. Where a retailer sells to a purchaser for use or consumption the purchaser can sue for the damages authorized by the Act; but where a wholesaler sells to a retailer who buys for resale in the course of trade or business and not for use or consumption, such retailer has no authority to institute the suit, but the right of action in such cases is vested in the Administrator. The opinion in Brown v. Glick Bros. Lumber Co. recognized this construction as the correct one from the literal meaning of the language used, but declined to follow it because in its opinion the result was unjust. It accordingly reworded the statutory provision so as to produce a different result. If such a change is to be made it should be by Congress rather than by the Court. Giving the provision the plain meaning expressed by its terms, the right of action in the present case is vested in the Administrator, who properly instituted the proceedings.

The defendant's motions to suppress the evidence and to dismiss the complaint are accordingly overruled.