## COLEMAN v. UNITED STATES.
### No. 10059.

Circuit Court of Appeals, Sixth Circuit.
Jan. 28, 1946.

As Amended March 18, 1946.

M. L. Okun, of Toledo, Ohio (M. L. Okun, A. A. Haddad and Michael V. DiSalle, all of Toledo, Ohio, on the brief), for appellant.

Gerald P. Openlander, Asst. U. S. Atty., of Toledo, Ohio (Don C. Miller, of Cleveland, Ohio, and Gerald P. Openlander, of Toledo, Ohio, on the brief), for appellee.

Before HICKS and SIMONS, Circuit Judges, and PICARD, District Judge.

PICARD, District Judge.

This is an appeal from conviction of defendant by the United States District Court for the Northern District of Ohio, Western Division, without a jury, on a six count indictment alleging violation of Title 18, Section 80, U.S. Code, 18 U.S.C.A. § 80, and Section 18.2, Article XVIII of General Ration Order No. 5 issued by the Office of Price Administration.

The first three counts charge that defendant, by falsely representing the number of customers served in three different periods upon which his applications were based, obtained more than his quota of meat ration points.

The second three counts charge failure to keep the proper daily records exacted from restaurants in defendant's particular class.

It is his claim as to the first three counts that his representations made to OPA couldn't be used against him in a criminal prosecution and that even if properly admitted, the evidence upon which he was convicted falls far short of weight beyond a reasonable doubt; that it is in character so tenuous and flimsy as to be entirely in the realm of guess and conjecture.

The three applications covered by the indictment represent that defendant had served from 75,000 to 85,000 persons during each of three two month periods, when—it is alleged—he had served not to exceed 10,000 during such times; and while defendant insists that the first three counts allege violation only of General Ration Order No. 5, it is a fact that they are based rather upon Section 80, Title 18 of the Code which makes it a crime to "knowingly and willfully falsify or conceal * * * or make * * * any false or fraudulent statements * * * in any matter within the jurisdiction of any department or agency of the United States."

To combat these charges appellant refers to one section of General Ration Order No. 5 and one of the Emergency Price Control Act.

Section 18.3 of General Ration Order No. 5 is as follows: "Sec. 18.3 Disclosure of Information. (a) Information and documents obtained pursuant to this Order will not be disclosed, in response to subpoena or otherwise, to any person other than the person furnishing such information or documents unless the Administrator of the Office of Price Administration (or a representative of the Office of Price Administration designated by him) determines that the requested disclosure is not contrary to law and consents to such disclosure."

Appellant insists that under this paragraph applications filed by him could not be used in criminal proceedings because his consent to such disclosure was not even alleged in the indictment; no evidence of such consent was produced at the trial and no proof that the Administrator "or a representative of the Office of Price Administration designated by him" had determined that the requested disclosure of such applications was not contrary to law and there-

fore had never consented to such disclosure.

Defendant also contends that admission of his applications in evidence violates subdivision (h) Section 202, Title 50 App. U. S.C. Section 922(h), 50 U.S.C.A. Appendix § 922(h), of the Emergency Price Control Act which provides: "(h) The Administrator shall not publish or disclose any information obtained under this Act that such Administrator deems confidential or with reference to which a request for confidential treatment is made by the person furnishing such information, unless he determines that the withholding thereof is contrary to the interest of the national defense and security."

We cannot agree with appellant for four reasons:

■ First (Sec. 18.3, G. R. O. No. 5), the act of the Administrator through his subordinates in presenting these facts to the grand jury is of itself a determination that the requested disclosure is not contrary to law and that he consents to the same;

■ Second (Section 202, Subdivision [h], E. P. C. A.), there is nothing to show that the administrator deemed the applications for ration books confidential; there was no evidence that appellant had made a request for their "confidential treatment"; and finally, here again the administrator being the complaining party and having presented the contents of all three applications, first to the grand jury and then to the district court, must have determined that withholding thereof would be "contrary to the interest of the national defense and security";

■ Third, that if it should be determined that the acts of the administrator or his representative did not meet all technical requirements of the OPA provisions it must be borne in mind that in this action we are not dealing with a disclosure protected by OPA limitations. The charge here is alleged violation of a separate statute, Title 18, Sec. 80 U.S.C.; 18 U.S.C.A. § 80, aimed to punish those who cheat, defraud or give false information to any department of the government and as stated in United States v. Kapp, 302 U.S. 214, 58 S.Ct. 182, 184, 82 L.Ed. 205: "Such questions (challenging right to present such false statements or representations in a criminal suit) cannot be raised by those who make false claims against the Government." (Words in parentheses ours). United States v. Mulligan, D.C., 268 F. 893; Rodgers v. United States, 6 Cir., 138 F.2d 992; Bowles, Administrator v. Chew, D.C., 53 F.Supp. 787.

■ Fourth, that it would be paradoxical to provide a penalty in one law for the giving of false information and then prohibit proof of the document disclosing the fraud on a presumed protection under the constitution or some act of Congress. The falsifier would then be permitted to escape punishment while retaining benefits of his fraud and such an interpretation would assuredly nullify the Emergency Price Control Act. When it is recalled that this was a war measure deemed necessary to assure the feeding of our men in service, to some extent our allies, and to assure an equitable distribution for the civilian population of the United States it could not have been expected that patriotism alone would suffice as a retaining wall. A legal barricade so riddled with loopholes and escapes would have only lightly deterred those not patriotically inclined. Self-preservation would have started a stampede of avoidance and the price control act would have been of no force and effect. See United States v. Mulligan supra, 268 F. 897; Wilson v. United States, 221 U.S. 361, 384, 31 S.Ct. 538, 55 L.Ed. 771, Ann.Cas.1912D, 558.

■ As for the proof presented to support the first three counts, we think the District Judge had sufficient. It was not guess work by any means, although witnesses were hostile to the government in most instances and as a matter of fact, one of them, the manager, later purchased appellant's business. Appellant's records were not complete and therefore the government had to rely upon statements of those who had served and worked in the restaurant and upon other proof available. But the evidence was conclusive that no such number of persons claimed by him when making application for ration points were or even could have been served with petitioner's limited facilities during any of the periods involved. It was apparent also that he had counted as meals such items as drinks, potato chips, pretzels, and other incidentals of refreshment in violation of the prescribed definitions specifically enumerated on the reverse side of the application blank.

■ Furthermore, evidence proving violation was obtained from appellant without coercion or without ignoring his constitutional rights. He voluntarily turned over

to OPA for examination such records as he did have without objection. Figures from defendant's most advantageous weeks were used and deductions made therefrom. On the first three counts the evidence is practically entirely the testimony of appellant's own employees, not records or reports submitted or tendered by appellant and these were viewed in their most favorable light for the accused. There was ample evidence to support the court's deductions and findings even were we to eliminate all testimony or exhibits that might be construed as self-incriminating under the most liberal interpretation of the law championed by appellant.

Passing to the second three counts wherein appellant allegedly failed to keep distinct and separate daily records of his business transactions, it is appellant's contention that he couldn't be convicted on the evidence of his own inadequate records since the Price Control Act guaranteed him immunity from all criminal prosecution. He bases this on Sec. 202(g) and (h) supra, of the Emergency Price Control Act of 1942, Jan. 30, 1942, C. 26, 56 Stat. 23, 50 U.S.C.A. Appendix § 922(g, h).

Section 202(g) "No person shall be excused from complying with any requirements under this section because of his privilege against self-incrimination, but the immunity provisions of the Compulsory Testimony Act of February 11, 1893 (U.S.C. 1934 edition, title 49, sec. 46), shall apply with respect to any individual who specifically claims such privilege." and the following decisions: McCarthy v. Arndstein, 266 U.S. 34, 45 S.Ct. 16, 69 L.Ed. 158; Counselman v. Hitchcock, 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110; Sullivan v. United States, 4 Cir., 15 F.2d 809; Brown v. Walker, 161 U.S. 591, 16 S.Ct. 644, 40 L.Ed. 819; United States v. Moore, D.C., 15 F.2d 593; Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746; Gouled v. United States, 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647.

■ A direct answer to this challenge is not essential to the disposition of this case as sentences imposed on the last three counts of the indictment were made to run concurrently with those imposed on the first three and which we have already sustained. Judgment therefore must necessarily be affirmed even though defendant's conviction on the last three counts might otherwise be reversible. Hirabayashi v. United States, 320 U.S. 81, 63 S.Ct. 1375, 87 L.Ed. 1774;

Abrams v. United States, 250 U.S. 616, 40 S.Ct. 17, 63 L.Ed. 1173.

■ We nevertheless hold that using appellant's own records to prove his failure to keep proper data as provided in the OPA regulations does not infringe upon immunity from self-incrimination guaranteed by the Fifth Amendment. The cases cited by appellant are not pertinent and the very point at issue was decided by this court in Rodgers v. United States, 6 Cir., 138 F.2d 992. Commenting upon and differentiating between the Boyd supra, and Wilson v. United States, supra, 221 U.S. 361, 384, 31 S.Ct. 538, 55 L.Ed. 771, Ann.Cas.1912D, 558 decisions, this court said: "The constitutional privilege against self-incrimination is not all-inclusive. There is excluded therefrom papers, records and reports required by law to be kept and made in order that suitable information may be obtained of transactions which are appropriate subjects of governmental regulations." [138 F.2d 995.]

■ Appellant seemingly also fails to consider that when he seeks to obtain his share of ration points to run his business, he by that very act opens the door to a check on the truth or falsity of any statements he makes. Wilson v. United States, supra, 221 U.S. 384, 31 S.Ct. 538, 55 L.Ed. 771, Ann.Cas.1912D, 558. He thus assures the government, that has taken control of the distribution of food during the crisis of war, that he will act in accordance with its instructions for the right and protection given him. No one compels this appellant or anyone else to take any certain number of ration points and if appellant had failed to take his requisition no criminal proceedings based upon any Federal law could have delved into his personal affairs to bring forth incriminating evidence. But when appellant decided to take advantage of the privilege the government was extending he agreed to abide by the rules and regulations thus laying the foundation for a quasi public relationship. As stated in Rodgers v. United States, supra, such records are "quasi-public documents and not for appellant's private use. They are for the benefit of the public and are open to inspection by such persons and officers as are authorized under the statute to inspect them. Wilson v. United States, 221 U.S. 361, 382, 31 S.Ct. 538, 55 L.Ed. 771, Ann.Cas.1912D, 558."

■ The evidence was also sufficient to convict on the last three counts. Proof

of violation in these types of cases is difficult under the most favorable circumstances and this difficulty should not be augmented by granting a premium to the violator who fails to keep proper records by assuring him that by his own malfeasance he has evaded proof and consequences for his wrongful acts. The government used the best evidence available. The trial court was convinced, as the record proves, that defendant made false statements to a department of the government in order to obtain an advantage for himself as a restaurant keeper; that he then failed to keep the proper records so that OPA could check on his activities and so he could cover up. He now seeks to escape liability by a strained application of the protection allegedly granted by the Constitution of the United States and by an Act of Congress.

We cannot agree with this reasoning. Judgment and sentence affirmed.