**BOWLES, Price Administrator, v. SACH-NOFF et al.**

**Civil Action No. 5012.**

District Court, W. D. Pennsylvania.

March 28, 1946.

Thomas F. Garrahan and A. Morris Ginsburg, both of Pittsburgh, Pa., for plaintiff.

Benjamin H. Rosen, of Pittsburgh, Pa., for defendant.

GOURLEY, District Judge.

In this proceeding, Chester Bowles, Administrator of the Office of Price Administration, now Paul A. Porter, his successor in office, has filed a Complaint against Meyer Sachnoff and Louis Fineberg, individually and as partners, trading as Federal Paper Company.

The complainant prays that the license of the defendants be suspended pursuant to the provisions of Section 205(f) (2) of the Emergency Price Control Act of 1942, as amended, 50 U.S.C.A.Appendix, §§ 901–946.

It is alleged in the Complaint that the defendants are operating a wholesale and jobbing store and, in connection with said business, sell cleansing tissues, paper bags, work gloves, brooms, clothes lines, galvanized ware, mops, and other commodities. That the sale of said commodities is governed by the provisions of General Maximum Price Regulation No. 182, effective July 28, 1942, and Revised Maximum Price Regulation 506, effective May 16, 1944.

That at all times prior to October 1, 1943, by the provisions of Section 1499.16 of General Maximum Price Regulation, every person selling at wholesale or retail any commodity for which a maximum price is established by General Maximum Price Regulation, or by any other price regulation making applicable the provisions of said Section 1499.16, was granted a license as a condition of selling said commodity.

That at all times prior to October 1, 1943, by the provisions of Section 1347.308(a) of Maximum Price Regulation No. 182, distributors of paper and paper products were granted a license as a condition of selling such commodity.

That at all times pertinent hereto, subsequent to October 1, 1943, by Licensing Order No. 1 (effective October 1, 1943, 8 F.R. 13240), every person selling any commodity subject to price control was automatically granted a license to make such sales, and every license theretofore granted by the Office of Price Administration and in effect when said Licensing Order became effective, was merged and continued in the license granted by said Licensing Order. At the time said Licensing Order became effective, the licenses granted to the defendants pursuant to said Section 1499.16 of GMPR, and Section 1347.308(a) of MPR 182, were in effect. Upon the effective date of RMPR 506, to-wit: May 16, 1944, a like license was granted to the defendants by said Licensing Order, incorporated by reference in Section 11 of RMPR .506. All said licenses are in full force and effect.

It is contended by the Government that the defendants have:

(a) Violated the provisions of their license and of MPR 182, in that between August 2, 1943, and to and including January 27, 1944, the defendants sold and offered for sale paper bags at prices higher than those established for said commodities by the provisions of MPR 182, as set forth in the license warning notice.

(b) On June 26, 1944, a license warning notice was sent to the defendants by registered mail pursuant to the provisions of Section 205(f) (2) of the Act and was received by the defendants.

(c) Violated the provisions of their license and of GMPR and RMPR 506, in that (a) on or about December 15, 1944 and on dates previous thereto, they required the purchase of an additional commodity with sales of Lydia Grey tissues, in violation of the provisions of GMPR; and in that (b) on or about January 19, 1945, they failed to supply each retailer of work

gloves, to whom they made sales thereof, with a list, not later than the first invoicing or billing, stating the manufacturer's lot or brand name thereof, defects, if any, the retail ceiling price, a description of the gloves, and the section of RMPR 506 governing the price thereof, which failure was in violation of RMPR 506; all of which violations were set forth in the license warning notice referred to in the next paragraph.

(d) On February 16, 1945, a license warning notice was sent to the defendants by registered mail pursuant to the provisions of Section 205(f) (2) of the Act and was received by the defendants.

(e) Subsequent to the receipt by the defendants of said license warning notices, the defendants at their place of business and in connection with the operation thereof violated Section 202(b) of the Act, violated the provisions of all of their licenses under said Licensing Order No. 1, and violated Sections 1499.11, 1499.12 and 1499.16 of GMPR, Sections 1347.305 and 1347.308 (a) of MPR 182, and Sections 8 and 11 of RMPR 506, in that, on September 5 and 6, 1945, the defendants wilfully refused to permit Arthur R. Koppel and Joseph P. Findley, as duly authorized investigators of the Office of Price Administration, for and on the behalf of the Price Administrator, to inspect and copy the defendants' business records and other documents concerning mops and other commodities, sold and being sold by the defendants, which were and are under price control; all of said business records and documents the defendants were required, by Section 202(b) of the Act, and by Sections 1499.11 and 1499.12 of GMPR, Section 1347.305 of MPR 182, and Section 8 of RMPR 506, to prepare, keep and make available for examination by the Office of Price Administration.

The Government prays that this Court enter an Order:

(1) Suspending the license granted by Licensing Order No. 1, as amended to the defendants, as a condition of selling commodities subject to price control, for which maximum prices are established by GMPR, MPR 182, RMPR 506, and by any other maximum price regulation of the Office of Price Administration, said suspension to be for a period not to exceed twelve months;

(2) Enjoining the defendants from directly or indirectly selling or offering to sell any commodities with respect to which said license to sell is suspended, during the period of suspension;

(3) Requiring the defendants to prepare, keep and make available for examination by the Office of Price Administration all records and documents which they are required to so prepare, keep and make available, in accordance with Section 202(b) of the Act, Sections 1499.11 and 1499.12 of GMPR, Section 1347.305 of MPR 182, Section 8 of RMPR 506, and in accordance with like provisions of any other maximum price regulations of the Office of Price Administration establishing maximum prices for other commodities which were, are, or may be sold by the defendants;

(4) Enjoining the defendants, during the pendency of this proceeding, as follows:

(a) Requiring the defendants, within five days after the issuance of the order herein prayed for, to prepare, keep and make available for examination by the Office of Price Administration, the records and documents which they are required to so prepare, keep and make available in accordance with Section 202(b) of the Act, Sections 1499.11 and 1499.12 of GMPR, Section 1347.305 of MPR 182, and Section 8 of RMPR 506, and in accordance with like provisions of any other maximum price regulations of the Office of Price Administration establishing maximum prices for other commodities which were or are being sold by the defendants;

(b) Restraining the defendants from selling any commodities the maximum prices of which are established by GMPR, MPR 182, RMPR 506, or by any other regulations of the Office of Price Administration establishing maximum prices for other commodities which were or are being sold by the defendants, after five days from the entry of the preliminary injunction herein demanded, so long as the defendants fail to prepare, keep, and make available for examination by the Office of Price Administration the records and documents they were and are required to so prepare, keep and make available in accordance with the provisions of said regulations;

(5) Granting such similar, other, further and different relief as to the Court may seem just, equitable and proper in the circumstances;

(6) Requiring the defendants to pay the costs of this proceeding.

The defendants have filed a motion to dismiss the Complaint, and aver that the claim filed by the Government does not support the relief prayed for. The motion filed by the defendants has been duly argued, and counsel for the respective party litigants have filed briefs in support of their position.

The only legal question before the Court for consideration is: Is a refusal, by a person licensed under licensing orders of the OPA, to permit duly authorized investigators of the OPA, for and on behalf of the Price Administrator, to inspect and copy the defendant's business records and other documents concerning commodities sold and being sold by the defendant, which were and are under price control, a violation of the Emergency Price Control Act of 1942, as amended, and of the OPA Regulations which pertain to the licensee's business; and is this true even in the absence of a subpoena issued by the Administrator?

It was admitted by counsel at the time of the argument that under the provisions of Section 205(f) (2) of the Emergency Price Control Act, that in order for the license of the defendants to be suspended, it is necessary for the Government to prove that the defendants have violated the provisions of the Act or the regulations which apply to the commodity or commodities in question subsequent to the time that the defendants have been issued a license warning notice. In this case, the defendants were first issued a license warning notice on June 26, 1944, and were again issued a license warning notice on February 15, 1945.

It is contended by the defendants that the only violation which it is claimed by the Government existed after the last warning notice of February 15, 1945, was the refusal of the defendants to permit authorized investigators of the Office of Price Administration for and on behalf of the Price Administrator, to inspect and copy the defendants' business records and other documents concerning mops and other commodities. This refusal, on the part of the defendants, it is claimed occurred on September 5 and September 6, 1945, and, for the purpose of considering the motion to dismiss, said facts are admitted to be true.

It is contended by the Government that the business records and documents in question were required to be kept and maintained by the defendants under the provisions of Section 202(b) of the Emergency Price Control Act, and by Sections 1499.11 and 1499.12 of GMPR, Section 1347.305 of MPR 182, and Section 8 of RMPR 506.

It is, in substance, the contention of the Government that the refusal of the defendants to permit the investigation requested, even without a subpoena duces tecum, constitutes a violation of the Act, of the Licensing Order, and of the Regulations involved in this proceeding, all of which justifies the Government in requesting the court to suspend the license of the defendants, and to enjoin the defendants from engaging in the sale of any of the commodities in question during the period of suspension which might be imposed by the Court.

The motion filed by the defendants to dismiss the Complaint under the provisions of Rule 12(b) of Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, supplements the general demurrer in the action of law, said motion admits all facts which are well pleaded for the purpose of disposing of the motion.

Said motion should not be granted unless it appears to a certainty that the plaintiff would not be entitled to any relief under any state of facts which could be proved in support of its claim. Federal Rules of Civil Procedure do not sanction disposition of doubtful issues of fact or law upon motions to dismiss for insufficiency of pleadings, but the Rules contemplate a determination of all such issues by a district court after hearing. In weighing the motion to dismiss the Complaint, the Court should consider all facts well pleaded in the light most favorable to the plaintiff, and then ascertain if any allegation in the complaint is sufficient to constitute a valid claim. American Viscose Corp. v. Rothensies, 3 Cir., 121 F.2d 186; Cohen v. United States, 9 Cir., 129 F.2d 733; Publicity Realty Building Corp. et al. v. Hannegan, 8 Cir., 139 F.2d 583; Berghane v. Radio Corp. of America, D.C., 4 F.R.D. 446; Tahir Erk v. Glenn L. Martin Co., 4 Cir., 116 F.2d 865, 869; Kohler v. Jacobs, 5 Cir., 138 F.2d 440 and 441, and Leimer v. State Mutual Life Assurance Co., 8 Cir., 108 F.2d 302, 306.

It is, therefore, necessary for the Court to first consider the various provisions of the Emergency Price Control Act which have application to the matter at issue.

The pertinent sections of the Act, Licensing Order, GMPR, MPR 182 and RMPR 506 are as follows:

Section 202 of the Emergency Price Control Act of 1942, as amended, provides, inter alia:

"(a) The Administrator is authorized to make such studies and investigations, to conduct such hearings, and to obtain such information as he deems necessary or proper to assist him in prescribing any regulation or order under this Act, or in the administration and enforcement of this Act and regulations, orders, and price schedules thereunder.

"(b) The Administrator is further authorized, by regulation or order, to require any person who is engaged in the business of dealing with any commodity, * * * to furnish any such information under oath or affirmation or otherwise, to make and keep records and other documents, and to make reports, and he may require any such person to permit the inspection and copying of records and other documents, the inspection of inventories * * *. The Administrator may administer oaths and affirmations and may, whenever necessary, by subpoena require any such person to appear and testify or to appear and produce documents, or both, at any designated place.

&ast; &ast; &ast; &ast; &ast; &ast;

"The Administrator shall not publish or disclose any information obtained under this Act that such Administrator deems confidential or with reference to which a request for confidential treatment is made by the person furnishing such information, unless he determines that the withholding thereof is contrary to the interest of the national defense and security."

Section 2 of the Act provides, inter alia, as follows:

"(a) Whenever in the judgment of the Price Administrator (provided for in section 201) the price or prices of a commodity or commodities have risen or threaten to rise to an extent or in a manner inconsistent with the purposes of this Act, he may by regulation or order establish such maximum price or maximum prices as in his judgment will be generally fair and equitable and will effectuate the purposes of this Act. * * *

"(g) Regulations, orders, and requirements under this Act may contain such provisions as the Administrator deems necessary to prevent the circumvention or evasion thereof."

Section 4(a) of the Act, under the heading "Prohibitions," provides, inter alia, as follows:

"It shall be unlawful, regardless of any contract, agreement, lease, or other obligation heretofore or hereafter entered into, for any person * * * to do or omit to do any act, in violation of any regulation or order under section 2, or of any price schedule effective in accordance with the provisions of section 206, or of any regulation, order, or requirement under section 202(b) or section 205(f) * * *."

Section 205(f) of the Act, under the heading "Enforcement," provides, inter alia, as follows:

"(1) Whenever in the judgment of the Administrator such action is necessary or proper in order to effectuate the purposes of this Act and to assure compliance with and provide for the effective enforcement of any regulation or order issued or which may be issued under section 2, or of any price schedule effective in accordance with the provisions of section 206, he may by regulation or order issue to or require of any person or persons subject to any regulation or order issued under section 2, or subject to any such price schedule, a license as a condition of selling any commodity or commodities with respect to which such regulation, order, or price schedule is applicable. It shall not be necessary for the Administrator to issue a separate license for each commodity or for each regulation, order, or price schedule with respect to which a license is required. * * *

"(2) Whenever in the judgment of the Administrator a person has violated any of the provisions of a license issued under this subsection, or has violated any of the provisions of any regulation, order, or requirement under section 2 or section 202(b), or any of the provisions of any price schedule effective in accordance with the provisions of section 206, which is applicable to such person, a license warning notice shall be sent by registered mail to such person. If the Administrator has reason to believe that such person has again violated any of the provisions of such license, regulation, order, price schedule, or requirement after receipt of such warning notice, the Administrator may petition * * * a district court subject to the limitations hereinafter

provided, for an order suspending the license of such person for any period of not more than twelve months. If any such court finds that such person has violated any of the provisions of such license, regulation, order, price schedule, or requirement after the receipt of the license warning notice, such court shall issue an order suspending the license to the extent that it authorizes such person to sell the commodity or commodities in connection with which the violation occurred, or to the extent that it authorizes such person to sell any commodity or commodities with respect to which a regulation or order issued under section 2, or a price schedule effective in accordance with the provisions of section 206, is applicable; but no such suspension shall be for a period of more than twelve months. * * * No proceedings for suspension of a license, and no such suspension, shall confer any immunity from any other provision of this Act; * * *."

Under the provisions of Section 201(a) of the Act it is provided, inter alia, as follows:

"* * * The Administrator may, subject to the civil-service laws, appoint such employees as he deems necessary in order to carry out his functions and duties under this Act, * * *."

And Section 201(b) of the Act also provides, inter alia:

"The principal office of the Administrator shall be in the District of Columbia, but he or any duly authorized representative may exercise any or all of his powers in any place."

It is further provided in Section 201(d) of the Act, that:

"The Administrator may, from time to time, issue such regulations and orders as he may deem necessary or proper in order to carry out the purposes and provisions of this Act."

Pursuant to the authority granted the Administrator by Section 205(f) of the Act, the Administrator issued Licensing Order No. 1 on September 27, 1943, effective October 1, 1943 (8 F.R. 13240), which, as amended, has been in full force and effect since that time. Its pertinent sections are as follows:

"1305.72 License required. Any person who makes a sale under price control is hereby required to have a license to make such sales.

"1305.73 License granted. A license to make sales under price control is automatically granted to all persons who now or hereafter make such sales. * * *

"1305.74 License suspension. A license granted hereby may be suspended in accordance with the provisions of the Emergency Price Control Act of 1942 for violations of the license or of one or more applicable maximum price regulations. The provisions of all such regulations are made a part of each license granted hereby, and a violation of any such provision is a violation of the license. A person whose license has been suspended may not, during the period of suspension, make any sale for which his license has been suspended."

The regulations promulgated by the Administrator pursuant to his authority under Section 2 of the Act, all contain provisions requiring the merchant to keep and maintain records and to allow them to be available for examination by the OPA. The following are the pertinent provisions of GMPR, MPR 182 and RMPR 506:

General Maximum Price Regulation:

"11 (1499.11) Base-period records. Every person selling commodities or services for which, upon sale, by that person, maximum prices are established by this Regulation, shall:

"(a) Preserve for examination by the Office of Price Administration all his existing records relating to the prices which he charged for such of those commodities or services as he delivered or supplied during March 1942, and his offering prices for delivery or supply of such commodities or services during such month; and

"(b) Prepare, on or before July 1, 1942, on the basis of all available information and records, and thereafter keep for examination by any person during ordinary business hours, a statement showing:

"(1) The highest prices which he charged for such of those commodities or services as he delivered or supplied during March 1942 and his offering prices for delivery or supply of such commodities or services during such month, together with an appropriate description or identification of each such commodity or service; and

"(2) All his customary allowances, discounts, and other price differentials. * * *

"12 (1499.12) Current Records. Every person selling commodities or services for

which, upon sale by that person, maximum prices are established by this Regulation shall keep, and make available for examination by the Office of Price Administration, records of the same kind as he has customarily kept, relating to the prices which he charged for such of those commodities or services as he sold after the effective date of this General Maximum Price Regulation; and, in addition, records showing, as precisely as possible, the basis upon which he determined maximum prices for those commodities or services. * * *

"16 (1499.16) Licensing. The provisions of Licensing Order No. 1, licensing all persons who make sales under price control, are applicable to all sellers subject to this regulation or schedule. A seller's license may be suspended for violations of the license or of one or more applicable price schedules or regulations. A person may not, during the period of suspension, make any sale for which his license has been suspended.

"17 (1499.17) Penalties. Persons violating any provision of this Regulation are subject to the criminal penalties, civil enforcement actions, and suits for treble damages provided for by the Emergency Price Control Act of 1942, and proceedings for the suspension of licenses."

Maximum Price Regulation 182:

"1347.305 Records and Reports. (a) Every person making a purchase or sale in the course of trade or business of Kraft Wrapping paper or Kraft bag paper after July 28, 1942, or of standard grocer's or variety bags after November 26, 1942, shall keep for inspection by the Office of Price Administration for so long as the Emergency Price Control Act of 1942 remains in effect, complete and accurate records of each such purchase or sale showing the date thereof, the name and address of the purchaser or seller, the price paid or received, the quantity and grade bought or sold."

"1347.308 Enforcement. (a) Persons violating any provisions of this Maximum Price Regulation No. 182 are subject to the criminal penalties, civil enforcement actions, license suspension proceedings, and suits for treble damages provided for by the Emergency Price Control Act of 1942."

"1347.308a Licensing. The provisions of Licensing Order No. 1, licensing all persons who make sales under price control, are applicable to all sellers subject to this regula-

tion or schedule. A seller's license may be suspended for violations of the license or of one or more applicable price schedules or regulations. A person whose license is suspended may not, during the period of suspension, make any sale for which his license has been suspended."

Maximum Price Regulation 506:

"Sec. 8. Records and Reports—

"(a) Records to be kept by retailers. Every person who sells staple work gloves governed by this regulation at retail must keep the following records, and make them available on request, to the Office of Price Administration * * *

"(b) Records to be kept and filed by persons selling at wholesale. Every person who sells work gloves covered by this regulation at wholesale must keep the following records, and make them available on request to the Office of Price Administration: * * *

"(c) Records to be prepared, kept, and filed by manufacturers—

"(1) Price list. * * * This list must be kept and made available on request to the Office of Price Administration * * *

"(2) Records and statements of wholesale percentage. * * * The records required by this sub-paragraph must be prepared on or before June 6, 1944, and thereafter must be kept and made available on request to the Office of Price Administration. * * *

"Sec. 11. Licensing and enforcement—

"(a) Licensing. The provisions of Licensing Order No. 1, licensing all persons who make sales under price control, are applicable to all sellers subject to this regulation. A seller's license may be suspended for violations of the license or this regulation. A person whose license is suspended may not, during the period of suspension, make any sale for which his license has been suspended.

"(b) Penalties. Any person who violates any provisions of this regulation is subject to the criminal penalties, civil enforcement actions, suits for treble damages, and proceedings for suspension of licenses provided by the Emergency Price Control Act of 1942, as amended."

It is thus seen that dealers in the commodities involved in this proceeding are required by the Act to keep such informative records as the Administrator may direct, and to permit the Administrator, upon re-

quest, to inspect and copy them. These requirements are an essential part of the congressional scheme of price stabilization and control. It is hard to see how the purposes of this vital war measure and now during the period of post-economic adjustment could be achieved without them. To effect the end desired, Congress clothed the Administrator with regulatory and investigatory powers commensurate with his responsibilities. He has been armed both with the authority to inspect and with the power of subpoenaing. The regulations on the subject are in harmony with the statutes. The records which the Government requested the right to inspect and copy were of the type required to be kept and to be made available for inspection.

 The existence of probable cause for believing that the Act has been violated is not a prerequisite to inspection. It must be remembered that the legislation was passed under emergency conditions grossly affecting the general welfare of the public and the war effort. Upon the Office of Price Administration has been imposed the task of seeing to it that the law is complied with by all dealers in essential commodities, and that evasion be sternly checked. There is a presumption of regularity and respect of the proceedings of administrative bodies. Hence, it is, therefore, presumed that the Administrator has not acted oppressively or undertaken to pursue investigations where no need therefor was apparent. Fleming v. Montgomery Ward & Co., 7 Cir., 114 F. 2d 384; United States v. Mulligan, D.C., 268 F. 893; Rodgers v. United States, 6 Cir., 138 F.2d 992, 996; Bowles v. Glick Brothers Lumber Co. et al., 9 Cir., 146 F. 2d 566.

It furthermore does not appear that the records involved in the instant proceeding are of such a type, i.e., private books and papers, which were involved in the case of Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746.

 The records involved in this proceeding are quasi-public in character and, as to them, the privilege against self-incrimination under the Fourth and Fifth Amendments of the Constitution does not apply. This is true whether the action be regarded as remedial or penal. Bowles v. Beatrice Creamery Co., 10 Cir., 146 F.2d 774; and Bowles v. Glick Brothers Lumber Co., 9 Cir., 146 F.2d 566.

Counsel for the parties involved in this proceeding have been unable to cite to the court any authority which involves the legal proposition involved in this proceeding, i.e., Was the refusal of the defendants to permit the duly authorized investigators of the Office of Price Administration, for and on behalf of the Price Administrator, to inspect and copy the defendants' business records and other documents concerning commodities sold and being sold by the defendants, without the issuance of subpoena duces tecum, a violation of the Emergency Price Control Act of 1942, as amended, so as to justify the court to suspend the license of the defendants?

The court has made a very exhaustive research of the law pertaining to this question, and although no case has been found exactly in point, the authorities hereinafter referred to involve a consideration of the legal proposition which is now before the court for adjudication. In the case of Bowles v. Glick Brothers Lumber Co., reported in 9 Cir., 146 F.2d 566, the court found that the investigation which was made of the defendant's records was with the consent of the defendant and at a time when they were represented by counsel. The court further held that assuming the information was secured by threats, it is hardly credible that these experienced business men, with counsel at their elbow, understood the requests which were made in any other sense than that statutory sanctions would be invoked or legal steps taken to the production of the records if voluntary access to them were refused. The court further held that under the circumstances just mentioned, the defendants were not denied the rights given to them under the Fourth and Fifth Amendments of the Constitution.

In the case of Bowles v. Beatrice Creamery Co., 10 Cir., 146 F.2d 774, the court found that on request to examine the records of the defendant, the consent given was free and voluntary. Although the defendant hesitated in making the records available, said decision was reached after the investigators of the Office of Price Administration submitted their credentials.

It is the contention of the defendants in the instant case that the consent of the owner is necessary for lawful inspection at his place of business, and the defendants are not compelled to make available the records desired without the issuance of a subpoena duces tecum. Cudahy Packing Co. v. Holland, 315 U.S. 357, 62 S.Ct. 651, 86 L.Ed. 895.

It is the further contention of the defendants that such legal process, i.e., a subpoena duces tecum must state the subject of the inquiry, must particularly describe the books and papers so that they can be readily identified, and must limit its requirements to books and papers that are relative to the inquiry. In other words, such process must confine its requirements within the limits which reason imposes in the circumstances of the particular case. Moreover, the person to whom such process is addressed may challenge its legality before being compelled to respond thereto. The statement of law just mentioned appears to have been given great weight and authority in the case of Bowles v. Beatrice Creamery Co., 10 Cir., 146 F.2d 774, 779.

Also in the instant case, there was no application for a license filed by the defendants, unless acceptance may be implied from continuing to do business after the promulgation of Section 1499.16 of General Maximum Price Regulation.

Moreover, section 205(f) (1) provides that the regulation or order may require "a license as a condition of selling any commodity or commodities with respect to which such regulation, order, or price schedule is applicable." It would seem, therefore, that the Administrator could not impose additional conditions in the license.

It has been repeatedly held by the courts that authority exists to inspect, copy or investigate any records which are public in nature, or which might be required by law, in order to make possible the legal effectiveness of the act or regulation. Fleming v. Montgomery Ward Co., 7 Cir., 114 F. 2d 384 (Fair Labor Standards Act, 29 U.S. C.A. § 201 et seq., Wage and Hour Division); McCarry v. Securities and Exchange Commission, 10 Cir., 147 F.2d 389 (Securities Act, 15 U.S.C.A. § 77a et seq.); Oklahoma Press Publishing Co. v. Walling, 10 Cir., 147 F.2d 658 (Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., Wage and Hour Division); Rodgers v. United States, 6 Cir., 138 F.2d 992 (Records required to be kept—Agricultural Adjustment Act, 7 U.S.C.A. § 601 et seq.); Wilson v. United States, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771, Ann.Cas.1912D, 558 (quasi-public documents generally).

In the case of Bowles v. Amato et al., D. C., 60 F.Supp. 361, which was an action for treble damages, the defendants filed a motion to suppress the evidence obtained by the Administrator on the ground that the securing of said testimony violated the defendants' constitutional privilege against self-incrimination. This investigation had been made by virtue of the subordinate powers of the Administrator, and the court held that Congress may require the keeping of records, reasonably necessary, as the means of enforcing valid law and to show whether compliance has been made with the law. Constitutional privilege against self-incrimination is inapplicable as to such records which are quasi-public in character. Records required to be kept by valid statute or by duly authorized regulations, such as the Emergency Price Control Act, and Price Administrator's regulations, are quasi-public and evidence disclosed thereby cannot be suppressed on defendants' motion in an action to recover treble damages so long as defendants are not required to give evidence viva voce or produce their private papers. In this case a subpoena duces tecum was issued against the defendants after the defendants had refused to voluntarily turn over such records, claiming privilege and immunity against self-incrimination.

In the case of Bowles v. Chu Mang Poo, etc., et al. (United Meat Co.), 58 F.Supp. 841, the United States Court in the Northern District of California, Southern Division, decided on February 20, 1945, it was held that persons subject to investigation by the Office of Price Administration may claim all privileges against self-incrimination where the Office of Price Administration does not resort to its subpoena power to compel the production of the records in question.

In the case of Bowles v. Stitzinger et al., D.C., reported in 59 F.Supp. 94, which was an action for treble damages, the defendants voluntarily made available the records of their business to investigators for the Office of Price Administration although no subpoena duces tecum for the production of the documents was produced, and the defendants, therefore, consented to the examination of their records by the Office of Price Administration agents. The court held that the examination which was made, and the evidence which was produced, involved information which was required to be kept by law, which was a quasi-public record, and the constitutional immunities did, therefore, not apply and that the statutes and regulations sanctioning such investigations do not violate the Fourth and Fifth Amendments of our Constitution.

In the case of Bowles v. Kirk, D.C., reported in 59 F.Supp. 97, a similar motion was presented to suppress evidence secured under similar circumstances, i.e., the defendant consented to the inspection of the records and the court held that the admission of said evidence did not violate the Fourth and Fifth Amendments of the Constitution even though no subpoenas were issued therefor.

In the case of Bowles v. Chew, D.C., reported in 53 F.Supp. 787, the defendant permitted the investigators to examine the books and sales records of the company, and the court held there was no search and seizure violating the Fourth and Fifth Amendments of the Constitution since the defendant was required to keep said records.

In the case of Bowles v. Joseph Denunzio Fruit Co., D.C., reported in 55 F.Supp. 9, a representative of the Office of Price Administration told representatives of the company that the purpose of his visit to examine sales records was to establish ceiling prices; the purpose of the subsequent investigation was not stated and the company cooperated in furnishing the information which was subsequently made the basis to establish the violation of Maximum Price Regulations. It was held that the company waived the right to object to the investigation of its records and to make copies thereof.

In the case of Bowles v. Curtiss Candy Co., D.C., reported in 55 F.Supp. 527, investigators for the Office of Price Administration were given the privilege to inspect the records of the defendant for the purpose of acquiring general information. In the course of such inspection or investigation, the inspectors discerned matters which suggested violations of the law and noncompliance with orders and regulations prescribed by the Administrator. The court held this could not be considered an unreasonable search in view of the inquisitorial right conferred by statute and the inspectors did nothing that they would not have a right to do under the law.

In the case of Bowles v. Seitz, D.C., reported in 62 F.Supp. 773, which was an action for treble damages, the defendant was required to testify and produce documentary evidence in accordance with a subpoena duces tecum issued by the Office of Price Administration. The court held that the constitutional privilege against self-incrimination did not apply for the reason that an action for treble damages was not a criminal case within the Fifth Amendment of the Constitution.

It, therefore, appears, after thorough consideration being given the authorities hereinbefore referred to, that whenever the Government validly regulates any business, it has a right to include in its regulation that records shall be kept open to official inspection for the purpose of ascertaining if said individual is complying with the orders or regulations. It appears to me that if an individual offers no objection or voluntarily consents to the examination of his records generally, and it develops that information be secured which would establish that the person has failed or neglected to comply with said orders or regulations, that the evidence secured thereby would not be subject to a motion to suppress. It would furthermore not be a violation of the provisions of the Fourth or Fifth Amendments to the Constitution of the United States, or, in other words, the constitutional rights of the person against self-incrimination would not be violated.

However, if the person governed by any order or regulation of the Office of Price Administration does not voluntarily consent, or refuses to comply with the request to make available the records in connection with his business for the purpose of inspection, that said investigator, under said circumstances, has no right or authority to examine or investigate the records. If any information is secured under the circumstances just mentioned which gives rise to any claim or prosecution, in my opinion, said evidence would be subject to a motion to suppress since it would amount to the person concerned being required to waive his constitutional immunities against self-incrimination. This is true since a subpoena duces tecum was not issued.

If the circumstances just stated arise, the Office of Price Administration has ample authority existing to issue a subpoena duces tecum to compel the person concerned to produce or make available for inspection the records in question. Where the Office of Price Administration fails or neglects to exercise the remedy provided by law, the situation with which it is confronted is due to its failure to exercise the remedy or authority provided by law.

In the instant case, the actions of the defendants in refusing to permit representatives of the Office of Price Administration

548

to inspect said records was a right and privilege guaranteed under the Constitution. However, since the Emergency Price Control Act was an emergency war measure, it was the definite intention of Congress to make said records public in nature. As a result thereof, the privilege of self-incrimination was made subservient to the interest of the public. Also, if a subpoena duces tecum had been duly issued by an authorized representative of the Office of Price Administration, in which the records or information desired pertaining to the business of the defendants was set forth, it would have been the duty of the defendants to comply therewith. This would have been subject only to the right of defendants to establish that the information or records requested would have no connection in any way whatsoever with any commodity or commodities sold by them.

Therefore, the refusal of the defendants to make available the information or records requested was not a violation of the regulations or the Act under the circumstances which exist, and the defendants, as a result thereof, did not violate any provisions of law subsequent to the issuance of the license warning notice.

Therefore, the motion of the defendants to dismiss the complaint is sustained without prejudice, however, to the Office of Price Administration to file such proceedings under the provisions of the Emergency Price Control Act of 1942, as amended, against the defendants for such other relief as might be authorized by law in connection with the violations set forth in the Complaint.

In connection with the motion for a Bill of Particulars, in view of the sustaining of the motion to dismiss, it is unnecessary for the court to consider the propriety of said motion.

An appropriate Order will be filed by the Court with this opinion.

### Order.

The motion of the defendants to dismiss the complaint is sustained without prejudice, however, to the Office of Price Administration to file such proceedings under the provisions of the Emergency Price Control Act of 1942, as amended, against the defendants for such other relief as might be authorized by law in connection with the violations set forth in the Complaint.