**BOWLES, Adm'r, Office of Price Administration, v. STITZINGER et al.**

Civil Action No. 2939.

District Court, W. D. Pennsylvania.

Jan. 23, 1945.

John A. Metz, Jr., Dist. Enforcement Atty., and William J. Blakeley, Enforcement Atty., both of Pittsburgh, Pa., for plaintiff.

John David Ray, of Beaver Falls, Pa., for defendant.

SCHOONMAKER, District Judge.

This is an action in which plaintiff seeks to recover treble damages pursuant to Section 205(e) of the Emergency Price Control Act of 1942, as amended, 56 Stat. 23, 50 U.S.C.A.Appendix, §§ 901 et seq., 925 (e), 56 Stat. 765, 50 U.S.A.Appendix, § 961 et seq., which is hereinafter referred to as "the Act."

Defendant E. L. Stitzinger, Jr., has filed an answer in which he states that he was inducted into the United States Army on May 7, 1944, and therefore avails himself of whatever protection the Soldiers' & Sailors' Relief Act of 1940, 50 U.S.C.A. Appendix, § 501 et seq., gives to him as a member of the Armed Forces of the United States.

The complaint charges that defendants sold and delivered southern pine lumber invoiced at approximately $11,522.35, at prices in excess of those permitted by maximum price regulation No. 19, and contrary to the requirements and prohibition of Article III, Sec. 14, § (a) and (b), (4) thereof, and that such sales were accomplished by purchasing said lumber from the mill, by selling and shipping such lumber directly from the mill to customers without taking the same to their own place of business, and falsely upgrading and invoicing numerous sales thereof. They thereby exceeded the maximum prices permitted under such price regulation.

The complaint asks for treble damages.

The defendants, other than E. L. Stitzinger, Jr., filed an answer June 15, 1944, denying the charges made in the complaint; and on July 17, 1944, filed a motion to suppress the evidence obtained from the defendants by investigators of the Office of Price Administration, on the ground that it was obtained from them in violation of defendants' constitutional rights.

The case came on to be heard on the motion to suppress, and evidence was taken in support of the motion and in opposition thereto.

■ From the pleadings and the testimony thus taken, we find the facts with reference to this motion to suppress to be follows:

On July 22, 1943, Reid and Rosen, duly accredited agents for the Office of Price Administration, went to the office of Stitzinger Brothers Lumber Company at New Castle, Pennsylvania, presented their credentials to defendants E. L. Stitzinger and Mary Kuttesch, two members of the defendant firm, and asked to see all the lumber records of that firm for the years 1942 and 1943. Defendant E. L. Stitzinger replied that the 1943 records were immediately available, but that the records for 1942 were stored in another room in the building, but that he could get them if the agents wanted them. Thereupon, the agents went into the private office of E. L.

Stitzinger and were there furnished the records which they examined between July 22 and July 28, 1943. At the time the agents went to the office of defendant firm, they had no subpoena for the production of documents. It might be held under the evidence that the defendants consented to the examination of their records by the OPA agents. But it is not necessary to pass on that question, because, as we view the law, the records of this firm were kept under the requirements of the Emergency Price Control Act of 1942, Section 202(b), 50 U.S.C.A.Appendix, § 922(b), which provides:

"The Administrator is further authorized, by regulation or order, to require any person who is engaged in the business of dealing with any commodity, * * * to permit the inspection and copying of records and other documents, the inspection of inventories, * * *."

Revised Maximum Price Regulation 19, Section 18, adopted under the Emergency Price Control Act, provides:

"All dealers of southern pine lumber must keep records which will show a complete description of the items of lumber sold (i. e., grades, conditions of dressing, quantity, etc.), the names and addresses of the buyers, the date of sale, and the price for a period of two years * *."

■ We are therefore of the opinion that no constitutional rights of the defendants have been violated. We are dealing here with the war powers of the Government, which may not be circumscribed if National security demands this exercise. United States v. Macintosh, 283 U.S. 605, 622, 51 S.Ct. 570, 75 L.Ed. 1302.

Many courts have held that the OPA may investigate the records required to be kept under the Regulations, and that the statutes and regulations sanctioning such investigations do not violate the Fourth and Fifth Amendments to our Constitution. See Bowles v. Chew, D.C., 53 F.Supp. 787; Bowles v. Joseph Denunzio Fruit Co., D.C., 55 F.Supp. 9; Bowles v. Curtiss Candy Co., D.C., 55 F.Supp. 527; United States v. Tire Center, D.C., 50 F.Supp. 404.

The only case to the contrary that has been called to our attention is Brown v. Glick Brothers Lumber Company, D.C., 52 F.Supp. 913. We decline to follow this decision, for in our opinion the court in that case overlooked the fact that records are required to be kept and that inspection of those records is authorized.

The courts have held any record which is required to be kept by law is a quasi-public record, and that constitutional immunities do not apply to those records. See Wilson v. United States, 221 U.S. 361, 380, 31 S.Ct. 538, 544, 55 L.Ed. 771, Ann. Cas.1912D, 558, where Mr. Justice Hughes said:

"But the physical custody of incriminating documents does not of itself protect the custodian against their compulsory production. The question still remains with respect to the nature of the documents and the capacity in which they are held. It may yet appear that they are of a character which subjects them to the scrutiny demanded and that the custodian has voluntarily assumed a duty which overrides his claim of privilege. This was clearly implied in the Boyd case [Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746], where the fact that the papers involved were the private papers of the claimant was constantly emphasized. Thus, in the case of public records and official documents, made or kept in the administration of public office, the fact of actual possession or of lawful custody would not justify the officer in resisting inspection, even though the record was made by himself and would supply the evidence of his criminal dereliction. If he has embezzled the public moneys and falsified the public accounts he cannot seal his official records and withhold them from the prosecuting authorities on a plea of constitutional privilege against self-incrimination. The principle applies not only to public documents in public offices, but also to records required by law to be kept in order that there may be suitable information of transactions which are the appropriate subjects of governmental regulation, and the enforcement of restrictions validly established. There the privilege which exists as to private papers cannot be maintained.

\*   \*   \*   \*   \*   \*

"The fundamental ground of decision in this class of cases is that where, by virtue of their character and the rules of law applicable to them, the books and papers are held subject to examination by the demanding authority, the custodian has no privilege to refuse production although their contents tend to criminate him. In assuming their custody he has accepted the incident obligation to permit inspection."

Those rulings in OPA cases above cited are no new departure. The "Required Records" doctrine has been applied in other cases subject to governmental regulation.

In the case of Fleming v. Montgomery Ward & Co., 7 Cir., 114 F.2d 384, the court said at page 391:

"We conclude that when Congress, in the exercise of its plenary power of regulation under the commerce clause, creates an administrative agency with power to regulate and supervise the acts and practices of an industry in order to safeguard commerce, and requires records to be kept to have available to the agency information respecting specified subjects, and requires the agency to enforce the requirement to keep such records, such administrative agency is entitled to inspect the records at any time to obtain the information and for the further purpose of determining whether or not such records are being kept, and whether or not they are being kept in such a way as to make available the specified information."

In Rodgers v. United States, 6 Cir., 138 F.2d 992, the court said on pages 995, 996:

"Since Congress may, under the Act, restrict the amount of cotton produced and marketed by the farmer without the payment of sanctions, it follows that it may require the farmer, as a means of enforcing the valid law, to keep records showing whether he has in fact complied with the Act and remained within the quota, exempt of sanctions or subject thereto. United States v. Darby, 312 U.S. 100, 125, 657, 61 S.Ct. 451, 85 L.Ed. 609, 132 A.L.R. 1430.

"The constitutional privilege against self-incrimination is not all-inclusive. There is excluded therefrom papers, records and reports required by law to be kept and made in order that suitable information may be obtained of transactions which are appropriate subjects of governmental regulations.

"The records and reports required by the statute and regulations here in question are quasi-public documents and not for appellant's private use. They are for the benefit of the public and are open to inspection by such persons and officers as are authorized under the statute to inspect them. Wilson v. United States, 221 U.S. 361, 382, 31 S.Ct. 538, 55 L.Ed. 771, Ann.Cas.1912D, 558."

The Circuit Court of Appeals of this Circuit, in A. Guckenheimer & Bros. Co. v. United States, 3 F.2d 786, had occasion to consider the demand of prohibition agents

for the surrender of papers. And Circuit Judge Woolley said on page 789 of 3 F.2d:

"While the corporation resisted the Government's demand and violent disputes followed, it did, nevertheless, give up the papers. We do not regard their surrender as having been made under duress, as now claimed by the corporation, but under a necessity imposed by law. While reluctantly made, the surrender was in a legal sense voluntary. The evidence is sufficient to support this finding of fact by the trial court. Having voluntarily surrendered the papers for one purpose, their use at the trial of this case for another purpose was not the result of a search or a seizure and was therefore not in violation of the corporation's right under the Fourth Amendment. We are of opinion they were properly admitted in evidence."

We therefore conclude that the motion to suppress must be denied. An order may be submitted accordingly on notice to opposing counsel.