**In re INDUSCO, Inc.**

United States District Court
S. D. New York.
Sept. 24, 1953.

Wolf, Popper, Ross, Wolf & Jones, New York City, for Indusco, Inc., Paul L. Ross, New York City, of counsel. Irving Constant, New York City, on the brief.

J. Edward Lumbard, U. S. Atty. for Southern District of New York, New York City, for the United States. Robert W. Sweet, Asst. U. S. Atty., New York City, of counsel.

DIMOCK, District Judge.

Motion to vacate or modify a court order requiring the production of certain books, papers and documents.

The order was obtained by the Acting Director of the Foreign Assets Control Division of the Treasury Department. The motion is made by Indusco, Inc., the corporation whose records are sought. Two main points are raised. First, that the Treasury Department has not shown that the records demanded are relevant and, second, that two of the documents called for are the private papers of Ida Pruitt, secretary of the corporation.

Apparently all of the documents in Ida Pruitt's possession relating to Indusco were exhibited to a representative of the Treasury Department on March 26, 1953, but when later an administrative subpoena was served only photostatic copies of portions of those documents allegedly belonging to Indusco and then in Ida Pruitt's possession were supplied. The complete documents were submitted to me on the argument of the motion.

With respect to the first point, the question seems to be whether the order has been complied with by the submission of photostats of portions of certain documents. These documents consist of

corporate minutes and correspondence from or to Indusco and they are concededly corporate records. Implicit in Indusco's position is the contention that it need not supply the complete documents but that it, or at least the court, may excise parts deemed irrelevant to the Treasury Department's lawful inquiry.

The government relies upon Section 5(b) of the Trading With the Enemy Act, 50 U.S.C.App. § 5(b) and the regulations issued thereunder, 31 C.F.R. (1949 Ed.1952 Cum.Supp.) 500.101–500.808, for its power to investigate. The statutory section provides:

"(b) (1) During the time of war or during any other period of national emergency declared by the President, the President may, through any agency that he may designate, or otherwise, and under such rules and regulations as he may prescribe, by means of instructions, licenses, or otherwise—

"(A) investigate, regulate, or prohibit, any transactions in foreign exchange, transfers of credit or payments between, by, through, or to any banking institution, and the importing, exporting, hoarding, melting, or earmarking of gold or silver coin or bullion, currency or securities, and

"(B) investigate, regulate, direct and compel, nullify, void, prevent or prohibit, any acquisition holding, withholding, use, transfer, withdrawal, transportation, importation or exportation of, or dealing in, or exercising any right, power, or privilege with respect to, or transactions involving, any property in which any foreign country or a national thereof has any interest,

by any person, or with respect to any property, subject to the jurisdiction of the United States; * * and the President shall, in the manner hereinabove provided, require any person to keep a full record of, and to furnish under oath, in the form of reports or otherwise, complete information relative to any act or transaction referred to in this subdivision either before, during, or after the completion thereof, or relative to any interest in foreign property, or relative to any property in which any foreign country or any national thereof has or has had any interest, or as may be otherwise necessary to enforce the provisions of this subdivision, and in any case in which a report could be required, the President may, in the manner hereinabove provided, require the production, or if necessary to the national security or defense, the seizure, of any books of account, records, contracts, letters, memoranda, or other papers, in the custody or control of such person; * * *."

The certificate of incorporation of Indusco, Inc., filed with the Secretary of State of the State of New York on December 13, 1940, states that the corporation is a membership corporation dedicated:

"(a) To carry on campaigns to inform the American people of the work of the Chinese Industrial Cooperative and other agencies in China with similar objectives.

"(b) To establish and promote co-operative industrial projects for the people of China.

"(c) To raise funds for the benefit of Chinese Industrial Co-operatives, and other similar relief and reconstruction organizations in China.

"(d) To support the Chinese industrial co-operative movement in all possible ways, and to aid it in maintaining high standards of technique and management."

Similarly the application of Indusco, Inc., for a license to permit the corporation to send funds out of this country and to Communist China, which was filed with the Treasury Department on May

16, 1951, states the business of the corportion:

"(5) Since September 1940 the applicant has been engaged in the business of raising voluntary donated funds for the industrial cooperatives in China, and since 1945 has raised money to aid the Sandan Bailie School, a cooperative training school for young people in China."

The order requires the production of all documents relating to transactions of the corporation subject to the regulations above mentioned and three letters specifically described. All that I need find to sustain the order is that the documents are relevant to a lawfully authorized inquiry, Oklahoma Press Pub. Co. v. Walling, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614, and that is plain from the terms of the statute, the statement of the corporate purposes and the language of the court order. Sifting through the various documents and excising irrelevant matter, however, presents a different question. I take the law to be that the Fifth Amendment by virtue of the self-incrimination provision affords no protection for the corporation or for its officers against the requirement of production of corporate records. Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, 208, 66 S.Ct. 494, supra. Since these are corporate documents and Indusco makes no other claim of privilege or for secrecy this case does not present the kind of situation that on occasion arises in proceedings for discovery under the Federal Rules of Civil Procedure, 28 U.S.C.A., where restrictions or conditions upon discovery are imposed. See 4 Moore's Federal Practice, 2nd Ed., 2477–2479. In the absence of a substantial claim of that sort I doubt very much that the inquiry should be restricted or that the court should be put to the task of examining corporate documents to see if particular sentences, paragraphs or any parts of documents are strictly speaking irrelevant to the inquiry being made. This would seem to

be the view of the court in Securities and Exchange Commission v. Vacuum Can Co., 7 Cir., 157 F.2d 530, certiorari denied 330 U.S. 820, 67 S.Ct. 770, 91 L.Ed. 1271.

Rather than rest my decision on that ground, however, I will consider the question of the propriety of the excisions made here. Certainly Indusco cannot be permitted to limit production to those portions of the documents that it deems come within the scope of the statute and the regulations. See Fleming v. Montgomery Ward & Co., 7 Cir., 114 F.2d 384, 392, certiorari denied 311 U.S. 690, 61 S.Ct. 71, 85 L.Ed. 446. The question of relevance as I have indicated is for the court. I do not think that I must find that the excised portions bear directly upon the subject of the inquiry. It is enough that they may supply needed information for use in checking other facts and records. Walling v. American Rolbal Corporation, 2 Cir., 135 F.2d 1003, 1005. Aside from the excised portions dealing directly with the financial transactions involving China already disclosed, there are excised portions dealing with corporate finances (e. g. the remainder of the financial reports attached to the corporate minutes, the names of banks in which corporate funds were kept and money raising reports), persons connected with the corporation, other organizations aiding projects in China and the time set for other corporate meetings. These matters may not relate solely to transfers of funds to China but they may help in checking other facts, or perhaps in discovery of other transactions, and will aid in understanding the nature of the transactions. While some of the material excised deals with the internal affairs of the corporation or the ideas and beliefs of the writer or different personalities, I cannot say that they will not prove to fit into some broader picture or pattern and, being parts of relevant documents, I cannot be certain that such matters are totally irrelevant. I think that, in the absence of some priv-

ilege or right to secrecy, the government is entitled to the complete documents.

Turning now to the second point, the two specified documents, the production of which is objected to, are letters sent to Ida Pruitt by two persons in China. Both letters were located in the same files with the corporate documents which were produced. One letter is from Rewi Alley, a representative of Indusco, Inc., in China. The government alleges that this letter is in response to another letter from Indusco, parts of which were produced, and which acknowledges receipt of the money said in the latter letter to have been sent to him. The second letter is from Shirley Barton who, it appears from the documentary material produced, acted as an intermediary in the transmission of funds and information between Ida Pruitt and Rewi Alley. The government alleges that this letter contains another request for additional funds to be sent to Rewi Alley. Typewritten copies of these two letters were submitted to me to determine whether they must be produced.

As I have already said, the corporation may not claim the privilege against self-incrimination for itself or for its officer Ida Pruitt, so that it is bound to produce the letters, if they are in its custody or control. The motion as made by the corporation therefore must be denied.

The evidence indicates, however, that the letters are in the possession of Ida Pruitt and, according to the papers, she claims for herself the privilege against self-incrimination with respect to these letters. While technically this motion is being made by Indusco and the attorneys appear for Indusco, I take it that they have also been retained by and appear for Ida Pruitt.

 The privilege against self-incrimination when claimed by a corporate officer protects only those papers which are the private property of the person claiming the privilege or at least are in his possession in a purely personal capacity. United States v. Wernes, 7 Cir., 157 F.2d 797, 800. See United States v. White, 322 U.S. 694, 699, 64 S. Ct. 1248, 88 L.Ed. 1542; United States v. Field, 2 Cir., 193 F.2d 92, 97, certiorari denied 342 U.S. 894, 72 S.Ct. 202, 96 L. Ed. 670. Thus, the question whether Ida Pruitt can be required to produce these letters depends on the character of the letters, that is, whether they are personal papers or the property of the corportation, in which case they are not held by Ida Pruitt, a corporate officer, in a personal capacity. Thus, if they are the property of the corporation they must be produced regardless of whether they are in possession of the corporation in general or of Ida Pruitt.

 Both letters are clearly part of a chain of corporate correspondence and of a course of conduct of the corporate business. Indeed, the copies submitted to me contain internal references to corporate affairs. On the other hand, they are not, as the government believes, on their face addressed to Indusco. They do not, however, contain any address. After the date line, there only appears a personal salutation. There is no evidence before me as to how the envelopes in which they were sent were addressed. It is not therefore absolutely clear that these are corporate documents. Nevertheless their location in corporate files, the links they form in the chain of corporate activity and their internal references to corporate affairs persuade me that they should be regarded as the property of the corporation although no one of these facts alone may be sufficient to support this conclusion. These documents should therefore be produced.

 There is also a third letter explicitly demanded by the order. Indusco has submitted with the motion a photostat of a letter purporting to comply with the order. The government contends that this is not the letter sought. It alleges that there is another letter of the same date. The documents produced do refer to another letter in the same month on the subject matter

that the government alleges it seeks. Whether there exists another letter of even date with the one submitted or perhaps of a different date in the same month, I cannot say. At the least, the allegation that no letter of that date between the two persons named has been found and that in the opinion of Indusco's attorney no such letter exists does not provide a sufficient ground for my modifying the order. The order provides for the examination of Ida Pruitt and such matters can be dealt with at the time of her examination. If the letter does not exist, its non-existence can be proved at that time and serve as an excuse for nonproduction.

Motion denied.