**UNITED STATES of America,**
Plaintiff-Appellee,

v.

**CHINA DAILY NEWS, Inc., and Eugene Moy, Defendants-Appellants,**
and
Chin You Gon, Tom Sung, and Chin Hong Ming, Defendants-Appellants.

**No. 331, Docket 23231.**

United States Court of Appeals, Second Circuit.

Argued June 14, 1955.

Decided July 5, 1955.

William Esbitt, Asst. U. S. Atty. for the Southern Dist. of New York, New York City (J. Edward Lumbard, U. S. Atty., New York City, on the brief), for plaintiff-appellee.

Paul L. Ross, of Wolf, Popper, Ross, Wolf & Jones, New York City, for defendants-appellants China Daily News, Inc., and Eugene Moy.

Thomas Russell Jones, Brooklyn, N. Y., for defendants-appellants Chin You Gon, Tom Sung, and Chin Hong Ming.

Before CLARK, Chief Judge, and MEDINA and HINCKS, Circuit Judges.

CLARK, Chief Judge.

These are appeals from judgments of conviction entered against several defendants under the Trading with the Enemy Act and regulations enacted pursuant thereto. Each of the defendants engaged in financial transactions involving interests in Communist China. The first two, the China Daily News, Inc., and its editor, Eugene Moy, extended credit and received payment for certain advertisements in the New York newspaper, China Daily News, by Communist controlled banks in Hong Kong. The other defendants (stockholder or stockholders and directors of the News) sent checks to relatives and acquaintances on the China mainland for the individual benefit of the recipients. Since the fact that these transactions occurred is not disputed, the appeal turns on the criminal consequences of such acts under the regulations. The defendants question both the applicability and the validity of the regulations, and in addition they raise other points concerning the admissibility and sufficiency of the evidence and the adequacy of the indictment. We are urged to give particularly serious consideration to these asserted errors because of the allegedly stringent sentences imposed by the trial judge. The case was heard by Judge Ryan without a jury after waiver of jury trial by all defendants.

Section 5(b)(1) of the Trading with the Enemy Act, 50 U.S.C.App. § 5(b) (1), gives the President or his appointee the power to control financial transactions with foreign countries in times of war or during other periods of national

672

emergency. On July 6, 1942, after declarations of national emergency in 1939 and 1941, and declarations of war in 1941, the President delegated his power under this statute to the Secretary of the Treasury in Exec. Order No. 9193, 50 U.S.C.App. § 6 note. That executive order, unrepealed to date, was the basis for the promulgation of the current Foreign Assets Control Regulations, 31 CFR §§ 500.101 et seq., on December 17, 1950, after the proclamation of a national emergency because of the Korean War. These regulations purport to cover all financial dealings with or for the benefit of Communist China or a national thereof.

■ Defendants China Daily News and Eugene Moy argue that their challenged dealings with the Bank of China and the Nanyang Commercial Bank in Hong Kong were licensed under former § 500.512 of the Foreign Assets Control Regulations. A careful reading of subsection (c), which is particularly relied upon, discloses no intent to authorize transactions with Hong Kong banks by anyone outside Hong Kong, such as these defendants. Furthermore, provisos to subsection (c) specifically exclude transactions by or on behalf of a specially designated national or a designated national not within the authorized trade territory. Since the banks in question were Communist controlled and were soliciting funds for Communist China, the extension of credit to them and the receipt of payments from them were undoubtedly prohibited by the provisos. See §§ 500.305, 500.306. The other defendants do not question the applicability of the regulations to them.

■ A more serious attack is directed to the Secretary of the Treasury's power to enact these regulations. Defendants maintain that the earlier delegation of power to the Secretary in 1942 was limited to the World War II situation and could not cover a new Korean emergency without a special reappointment by the President. Although the delegation of power in Exec. Order

No. 9193 was never so limited, there perhaps might be some substance to defendants' argument if the power of the Secretary had ever lapsed through the termination of all states of war and emergencies. Conceivably such a result might follow from the fact that the President himself is empowered to act only in emergency situations. We need not reach that question here, however, since at the time of the declaration of the Korean emergency and the promulgation of these regulations, the World War II emergency had not yet been declared terminated. This latter event did not occur until April 26, 1952, and was accompanied by a reassertion of the Korean emergency and preservation of the executive orders delegating authority pursuant thereto. Exec. Order No. 10348, 50 U.S.C.App. § 6 note. Thus at all relevant times the Secretary was empowered to act under § 5(b) of the Trading with the Enemy Act. There has been no suggestion that his exercise of that power in any way exceeded the scope of the statute or conflicted with the wishes or intentions of the President.

■ Once the validity and applicability of the regulations are established, the only other question of importance is whether or not the evidence sufficiently established the defendants' willful and knowing violation thereof. Our examination of the record convinces us that the convictions must stand. In support of this conclusion we need point only to some of the more significant items in the evidence. All of the individual defendants were affiliated with the China Daily News, itself a defendant, which published news reports and notices about the fact of federal blocking of financial dealings with Communist China and also suggestions for circumventing the regulations. Personal knowledge of violation of the regulations was brought home to Moy by a conversation with one Chang, and could be deduced, in the case of the other individual defendants, from their use of fictitious payees and addresses when sending money to China. Each of the defendants repeatedly ig-

nored the regulations so that their violations could be reasonably characterized as willful.

Defendant Moy complains of the admissibility of certain evidence against him, and he and the China Daily News contend that the indictment under which they were convicted was fatally defective. The evidence with which Moy is concerned consisted of the books of the China Daily News which detailed the financial transactions of which it and he were convicted. These books were admissible against Moy as Editor, Managing Editor, and Chairman of the Board of Directors of the newspaper, United States v. Feinberg, 2 Cir., 140 F.2d 592, 154 A.L.R. 272, certiorari denied Feinberg v. United States, 322 U.S. 726, 64 S.Ct. 943, 88 L.Ed. 1562; in addition there was sufficient other evidence to support conviction without them. The indictment adequately gave notice of the crime charged, and was not defective in failing to list exempted transactions within which the dealings of the defendants did not in any case fall.

We come lastly to the sentences imposed by Judge Ryan. These included a total fine of $25,000 for the China Daily News on the several counts, and prison sentences for all the individual defendants, amounting to two years for Moy and one year for the others, with sentence suspended as to one, Tom Sung. This of course is much less than could have been imposed even on a single count, the statute permitting a fine up to $10,000 or imprisonment up to ten years or both. Nevertheless, considering the small amounts involved, the sentences may well seem heavy. Judge Ryan was, however, undoubtedly impressed with the claim of the prosecution that this was a planned and extensive siphoning of funds from New York City into Communist China, and that strict enforcement of the law was required in order to deter the Chinese community in general from further violations of the statute and regulations. Be that as it may, the matter was one for Judge Ryan's discretion which we are not authorized to review.

We are informed by counsel on both sides that Tom Sung has died subsequent to his conviction and during the pendency of his appeal. His appeal is therefore dismissed as moot. The convictions against the remaining defendants are affirmed.