Oscar WAGMAN and N. Wagman & Company, Incorporated, Petitioners,

v.

Elting ARNOLD, Acting Director, and Walter C. Gorsuch, Supervising Agent, Foreign Assets Control, Treasury Department.

United States District Court
S. D. New York.
May 23, 1957.

Fulton, Walter & Halley, New York City, for petitioners. Joseph W. Burns, New York City, of counsel.

Paul W. Williams, U. S. Atty., for the Southern Dist. of New York, for United States of America, Robert W. Bjork, Asst. U. S. Atty., New York City, of counsel.

LEVET, District Judge.

Oscar Wagman and N. Wagman & Company, Incorporated, have petitioned this court for an order quashing or modifying an administrative "subpoena" entitled "Order to Make Records Available for Examination" issued by the Foreign Assets Control Division of the Treasury Department, and directing that certain property be returned which allegedly had been unlawfully seized by agents of the Foreign Assets Control without a warrant.

The Foreign Assets Control is a division of the Treasury Department and is authorized to enforce Section 5(b) of the Trading With the Enemy Act, 50 U.S. C.A.Appendix, § 5(b), which gives the President or his appointee the power during any period of national emergency to regulate or prohibit transactions with any foreign country or nationals thereof, and to require full records, reports and information concerning such transactions. The President delegated his power under this statute to the Secretary of the Treasury, Executive Order No. 9193, 50 U.S.C.A.Appendix, § 6 note. On December 17, 1950, in accordance with this authority and under the proclamation of a national emergency because of the Korean conflict, the Secretary of the Treasury promulgated the current Foreign Assets Control Regulations, 31 C.F. R. §§ 500.101 et seq. Section 500.204 of

these regulations prohibits individuals and corporations subject to the jurisdiction of the United States from engaging in any transaction concerning merchandise originating from Communist China or North Korea, unless specifically authorized by the Secretary of the Treasury or his designee. Hog bristles are expressly included in the category of merchandise within the meaning of this regulation. The Secretary of the Treasury's power to enact these regulations was upheld in United States v. China Daily News, Inc., 2 Cir., 1955, 224 F.2d 670, certiorari denied 350 U.S. 885, 76 S.Ct. 138, 100 L.Ed. 780.

The petitioner, Oscar Wagman, is vice-president and a director of the corporate petitioner, N. Wagman & Company, Incorporated. The corporation is engaged in the business of importing and exporting bristles, animal hair and wool. It maintains offices in Philadelphia, Pennsylvania, and New York City, New York. Prior to 1953, the bulk of the corporation's business was in China hog bristles. The corporation was licensed to import China hog bristles until sometime in 1952. Thereafter it could no longer lawfully import this commodity.

In May, 1954, the New York Office of the Foreign Assets Control Division commenced an investigation of the Wagman corporation in order to ascertain whether or not in 1953 and 1954 the firm had engaged in transactions involving Chinese bristles in contravention of the Foreign Assets Control Regulations. The Foreign Assets Control Division was particularly interested in the Wagman corporation's connection with certain transactions involving the sale of China hog bristles by de Muinck & Company of Amsterdam, Holland to a Canadian brush manufacturing firm named T. S. Simms and Company, Ltd. Mr. Oscar Wagman appeared at the New York office of the Foreign Assets Control Division and permitted the agents to inspect certain of his files. He also furnished the agents with a detailed affidavit of his dealings with de Muinck and Simms in which he stated that he made a personal loan to Simms totaling $300,000 to enable Simms to purchase China hog bristles from de Muinck. The loan was without interest and allegedly made for the purpose of retaining Simms' good will.

Further investigations of the Wagman corporation were made in August, 1956, when agents of the Foreign Assets Control Division simultaneously visited its Philadelphia and New York offices. At both offices the agents were informed that Oscar Wagman was in Europe. In addition, the agents visiting the New York office were advised by the secretary in charge that she had been in the corporation's employ only a short time and was not familiar with the files. The agents told her that they were Treasury agents, displayed their badges and asked to see the correspondence and records relating to the purchase and sale of hog bristles. There is some dispute as to whether the agents took several folders of documents from the file cabinets or whether the secretary handed the folders to the agents and told them that they might look through the file cabinet themselves. In any event, pursuant to a telephone conversation with the agents who were then in the corporation's Philadelphia office, the agents in the New York office discontinued their examination of the records and wrapped the documents, which they had removed from the files, in a shopping bag and then sealed the bag with a piece of paper on which they signed their names. They informed the secretary that they were going to leave the package in Oscar Wagman's office until they returned to continue the examination and that it would be unlawful to break the seal. No representative of the Treasury Department has had any access to these documents since that time. The package remained in the custody of the petitioners and their counsel until the hearing on this motion.

Petitioners object to the "Order to Make Records Available for Examination," dated February 11, 1957, on the following grounds:

"1. The said Order is not authorized by law, as required by Section 6(b) of the Administrative Procedure Act, 5 U.S.C.A. Section 1005 (b).

"2. The said Order unlawfully requires the production of documents and records made more than two years before February 11, 1957, and is unauthorized under Section 500.-602 of Chapter V of Title 31 of the Code of Federal Regulations, 31 C.F.R. 500.602.

"3. The said Order requires the production of records selected from petitioners' files in their office at 80 Wall Street, New York, N. Y. by Treasury Representatives, pursuant to unlawful search and seizure, in violation of the 4th Amendment to the Constitution of the United States.

"4. The purpose of said Order is to procure evidence to compel petitioner Oscar Wagman to incriminate himself, in violation of the 5th Amendment to the Constitution of the United States."

The parties to this motion have stipulated that the court might inspect the contents of the sealed package in order to determine whether the documents in the folders relate to corporate affairs or to private matters of Oscar Wagman. The stipulation was entered into without prejudice to petitioners' position that the distinction between corporate or private matters is immaterial, since it is claimed that the documents were obtained as a result of an unreasonable search and seizure within the meaning of the Fourth Amendment.

The "Order to Make Records Available for Examination" which was issued to Mr. Oscar Wagman, individually and as vice-president of N. Wagman & Company, Incorporated, reads in part as follows:

"Pursuant to Section 5(b) of the Trading with the Enemy Act, as amended, and Sections 500.601 and 500.602 of Chapter V of Title 31 of the Code of Federal Regulations, 31 CFR 500.601, 500.602, You and Each of You Are Hereby Required to Produce and Make Available:

"The record within your custody or control, including all books of account, contracts, letters, memoranda or other papers relative to all transactions subject to the provisions of this Chapter engaged in by you and each of you on or since December 17, 1950 and relative to any property in which any foreign country or any national thereof has or has had any interest of any nature whatsoever, direct or indirect, on or since said date;

"Including particularly those records which were selected from your files on August 3, 1956 by Treasury representatives and set aside by mutual consent;

"And with specific reference to all dealings in Chinese hog bristles which you and each of you had with de Muinck & Co., Handelmatschappij N. V., Amsterdam, The Netherlands and with T. S. Simms & Co., Limited, Saint John, New Brunswick, Canada on and after January 1, 1953.

"All of the foregoing documents and papers are required to be produced at Room 6, United States Court House, Foley Square, New York, N. Y., on the 27th day of February, 1957, at 10 o'clock A.M."

Petitioners' contention that said Order is not authorized by law is predicated upon Section 6(b) of the Administrative Procedure Act, 5 U.S.C.A. § 1005(b), which provides in part as follows:

"(b) No process, requirement of a report, inspection, or other investigative act or demand shall be issued, made, or enforced in any manner or for any purpose except as authorized by law."

The Foreign Assets Control Division asserts that it is authorized to compel production of the letters and documents contained in the seized folders pursuant to Section 500.602 of the Foreign Assets

Control Regulations in 31 C.F.R., which provides as follows:

"§ 500.602 *Reports to be furnished on demand.* Every person is required to furnish under oath, in the form of reports or otherwise, from time to time and at any time as may be required by the Secretary of the Treasury or any person acting under his direction or authorization complete information relative to any transaction subject to the provisions of this chapter or relative to any property in which any foreign country or any national thereof has any interest of any nature whatsoever, direct or indirect. The Secretary of the Treasury or any person acting under his direction may require that such reports include the production of any books of account, contracts, letters or other papers, connected with any such transaction or property, in the custody or control of the persons required to make such reports. Reports with respect to transactions may be required either before or after such transactions are completed. The Secretary of the Treasury may, through any person or agency, investigate any such transaction or property or any violation of the provisions of this chapter regardless of whether any report has been required or filed in connection therewith."

The aforementioned regulation derives its authority from Section 5(b) of the Trading With the Enemy Act, which provides for "the production, or if necessary to the national security or defense, the seizure, of any books of account, records, contracts, letters, memoranda, or other papers in the custody or control of * * * [a person or corporation subject to the Act.]"

Manifestly, the issuance of the "Order to Make Records Available for Examination" was "authorized by law" within the meaning of Section 6(b) of the Administrative Procedure Act, 5 U.S.C.A. § 1005(b). The report or affidavit (which is under oath and, hence, within the requirement of the first sentence of Section 500.602) which Mr. Oscar Wagman submitted to the Foreign Assets Control Division concerning his dealings with de Muinck and Simms contained information which necessitated further investigation. The records and documents on this subject are sought by the Foreign Assets Control Division as part of such investigation and relate to matters referred by Mr. Wagman in his affidavit. Consequently, the Foreign Assets Control Division is entitled to the production of these records and documents pursuant to the second sentence of Section 500.602 of the Foreign Assets Control Regulations. Petitioners' objection based upon this point must be overruled.

With respect to the claim of privilege against self-incrimination, it is abundantly clear that a corporation is not entitled to the benefit of this protection under the Fifth Amendment. Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652; Wilson v. United States, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771; Baltimore & Ohio Railroad Co. v. Interstate Commerce Commission, 221 U.S. 612, 31 S.Ct. 621, 55 L.Ed. 878; Oklahoma Press Pub. Co. v. Walling, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614; Fleming v. Montgomery Ward & Co., 7 Cir., 1940, 114 F.2d 384, certiorari denied 311 U.S. 690, 61 S.Ct. 71, 85 L.Ed. 446. Moreover, the privilege has been held to be a personal one which cannot be asserted by a corporation on behalf of its officers. Wilson v. United States, supra; Baltimore & Ohio Railroad Co. v. Interstate Commerce Commission, supra; Oklahoma Press Pub. Co. v. Walling, supra.

The privilege against self-incrimination which is claimed by petitioner Oscar Wagman in his personal capacity protects only those papers which are his private property and not the property of the corporation. United States v. Wernes, 7 Cir., 1946, 157 F.2d 797, 800; In re Indusco, Inc., D.C.S.D. N.Y. 15 F.R.D. 7, 11. With the consent of all parties to this motion, I have examined the contents of the seized

documents which were submitted by the petitioners. The papers relate to corporate affairs and cannot be considered Oscar Wagman's private property. Hence, his claim of privilege is inapplicable to these documents.

The next point emphasized by the petitioners is that the Treasury agents' examination and sealing of the folders taken from the files in the corporation's New York Office constituted an unreasonable search and seizure in violation of the Fourth Amendment. A consideration of this issue requires an examination of Section 500.601 of the Foreign Assets Control Regulations, 31 C.F.R., which reads:

"*Records.* Every person engaging in any transaction subject to the provisions of this chapter shall keep a full record of each such transaction engaged in by him, regardless of whether such transaction is effected pursuant to license or otherwise, and such record shall be available for examination for at least two years after the date of such transaction."

■ The rule is well settled that books, papers, and records which are required by law to be kept in order to provide information concerning transactions covered by governmental regulations are public or quasi-public records and an examination of such records by the appropriate governmental authorities does not violate the provisions of the Fourth Amendment prohibiting unreasonable searches and seizures. Bowles v. Glick Bros. Lumber Co., 9 Cir., 1945, 146 F.2d 566, certiorari denied 325 U.S. 877, 65 S. Ct. 1554, 89 L.Ed. 1994; Rodgers v. United States, 6 Cir., 1943, 138 F.2d 992; Fleming v. Montgomery Ward & Co., Inc., 7 Cir., 1940, 114 F.2d 384, certiorari denied 311 U.S. 690, 61 S.Ct. 71, 85 L.Ed. 446; Bartlett Frazier Co. v. Hyde, 7 Cir., 1933, 65 F.2d 350, certiorari denied Bartlett Frazier Co. v. Wallace, 290 U.S. 654, 54 S.Ct. 70, 78 L.Ed. 567; A. Guckenheimer & Bros. Co. v. United States, 3 Cir., 1925, 3 F.2d 786, certiorari denied 268 U.S. 688, 45 S.Ct. 509, 69 L.Ed. 1157;

In re Bleichfeld Bag & Burlap Co., Inc., D.C.W.D.N.Y., 1952, 105 F.Supp. 162; Bowles v. Stitzinger, D.C.W.D.Penn., 1945, 59 F.Supp. 94; United States v. Mulligan, D.C.N.D.N.Y., 1920, 268 F. 893. See also Wilson v. United States, 221 U.S. 361, 380, 31 S.Ct. 538, 55 L.Ed. 878.

In Fleming v. Montgomery Ward & Co., Inc., supra, involving the production of records concerning wages and hours under the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq., the following language is pertinent:

"We conclude that when Congress, in the exercise of its plenary power of regulation under the commerce clause, creates an administrative agency with power to regulate and supervise the acts and practices of an industry in order to safeguard commerce, and requires records to be kept to have available to the agency information respecting specified subjects, and requires the agency to enforce the requirement to keep such records, such administrative agency is entitled to inspect the records at any time to obtain the information and for the further purpose of determining whether or not such records are being kept, and whether or not they are being kept in such a way as to make available the specified information." 114 F.2d at page 391.

In Bowles v. Stitzinger, supra, the following facts and conclusion appear:

"On July 22, 1943, Reid and Rosen, duly accredited agents for the Office of Price Administration, went to the office of Stitzinger Brothers Lumber Company at New Castle, Pennsylvania, presented their credentials to defendants E. L. Stitzinger and Mary Kuttesch, two members of the defendant firm, and asked to see all the lumber records of that firm for the years 1942 and 1943. Defendant E. L. Stitzinger replied that the 1943 records were immediately available, but that the records for 1942 were stored in an-

other room in the building, but that he could get them if the agents wanted them. Thereupon, the agents went into the private office of E. L. Stitzinger and were there furnished the records which they examined between July 22 and July 28, 1943. At the time the agents went to the office of defendant firm, they had no subpoena for the production of documents. It might be held under the evidence that the defendants consented to the examination of their records by the OPA agents. But it is not necessary to pass on that question, because, as we view the law, the records of this firm were kept under the requirements of the Emergency Price Control Act of 1942, Section 202(b), 50 U.S.C.A.Appendix, § 922(b)   *   *   *.

"We are therefore of the opinion that no constitutional rights of the defendants have been violated. We are dealing here with the war powers of the Government, which may not be circumscribed if National security demands this exercise   *   *."
59 F.Supp. at page 95.

■ The petitioners cannot complain that the agents unreasonably searched folders which contained documents unrelated to China hog bristle transactions since the folders in question do contain some papers pertaining to such transactions. However, these papers were not kept separately, but were intermingled with documents pertaining to other bristle and hair matters and, therefore, under these circumstances, the Treasury agents' examination of the folders was not unreasonable.

■ The petitioners argue that since Section 500.601 of the regulations provides that the prescribed record must "be available for examination for at least two years after the date of" each transaction covered by said regulations, it follows that records relating to transactions beyond the two year period need not be made available. It is significant that Section 500.601 specifically qualifies the two year limitation by the words "at least." Thus, a wilful failure to maintain records for at least two years after a transaction subject to the regulations is punishable under Section 5(b) of the Trading With the Enemy Act, whereas criminal liability does not attach to a failure to maintain records for more than the prescribed two years. Section 500.-601 does not alter the status of records which are maintained for a longer period than required. Said records are public or quasi-public in character and remain as such.

Accordingly, petitioners' motion for an order quashing the "Order to Make Records Available for Examination" must be denied. However, I believe that the demand for the production of certain records and documents is too broad and should be modified so as to include only the records, books of account, contracts, letters, memoranda or other papers relative to dealings in China hog bristles which petitioners had with de Muinck & Co., Handelmatschappij N. V., Amsterdam, The Netherlands, and with T. S. Simms & Co., Limited, Saint John, New Brunswick, Canada, on and after January 1, 1953. Said records, books and documents are to be produced in Room 6, United States Court House, Foley Square, New York, N. Y., as required by the original Order, within five days after the service upon petitioners of the Order herein.

The remaining records which do not relate to dealings with de Muinck and Simms and which were selected from petitioners' files on August 3, 1956 and set aside by mutual consent need not be produced, although they are to be returned to petitioners with the direction that they shall be made available for examination by the agents of the Foreign Assets Control.

The second part of petitioners' motion, relating to the request for an order directing the return of the records and the suppression of evidence, is denied.

Settle order on notice.