Oscar **WAGMAN** and N. Wagman & Company, Incorporated, Appellants,

v.

Elting **ARNOLD**, Acting Director, and Walter Gorsuch, Supervising Agent, Foreign Assets Control, Treasury Department, Appellees.

No. 221, Docket 24909.

United States Court of Appeals Second Circuit.

Argued Feb. 6, 1958.

Decided June 13, 1958.

Fulton, Walter & Hal'ey, New York City (Joseph W. Burns, New York City, of counsel), for appellants.

Paul W. Williams, U. S. Atty., S. D. N. Y., New York City (Robert W. Bjork, Mark F. Hughes, Jr., Asst. U. S. Attys., New York City, of counsel), for appellees.

Before MEDINA, WATERMAN and MOORE, Circuit Judges.

WATERMAN, Circuit Judge.

The petitioners-appellants ccmmenced this proceeding in the District Court for (1) an order quashing or modifying an administrative "Order to Make Records Available for Examination" issued by the Acting Director, Foreign Assets Control Division, Treasury Department; and (2) an order directing that certain property of appellants which allegedly was unlawfully seized without a warrant by agents of the Foreign Assets Control Division be returned to appellants and suppressed as evidence against them in any crim'nal proceeding. The District Court, Wagman v. Arnold, 152 F.Supp. 637, denied the petition to quash, and to return and suppress; and also ordered the production of only some of the documents the

administrative order called for, the appellants being directed to keep the remainder available for examination. A full statement of facts is found in the opinion of Levet, J., in Wagman v. Arnold, supra.

Section 5(b) of the Trading with the Enemy Act, 40 Stat. 411 as amended, Title 50 U.S.C.A.Appendix, § 5(b) authorizes the President or his designate, during time of war or other period of national emergency, to regulate or prohibit transactions with any foreign country or nationals thereof, and to require full records, reports and information concerning such transactions. Since December 17, 1950 the Foreign Assets Control Division of the Treasury Department has been the agency charged with the administration of the powers conferred by Section 5(b). After the outbreak of the Korean conflict, the Secretary of the Treasury promulgated Foreign Assets Control Regulations, 31 C.F. R. § 500.101 et seq. Section 500.204 provides that all trading in merchandise originating in Communist China or North Korea is prohibited, except that designated commodities may be traded in if authorized by a government license. One of the commodities included within the meaning of this regulation is Chinese hog bristle.

The appellant Oscar Wagman is a vice president and a director of the corporate appellant N. Wagman & Co., Inc. He is also the owner of one third of the corporate stock of N. Wagman & Co., Inc. For many years the corporate appellant has been engaged in the business of importing and exporting bristles, animal hair, and wool. Prior to 1953 the bulk of the corporate business was in Chinese hog bristle, most of which was handled by Oscar. In 1954 the Foreign Assets Control Division commenced an investigation of the corporation and in connection therewith Oscar appeared at the Division's New York office with his attorney and gave agents of the Division an affidavit, dated May 19, 1954, which in detail disclosed transactions had with de Muinck & Company of Amsterdam, Holland, and with a Canadian brush manufacturing firm, T. S. Simms and Company, Ltd. Some time later, on August 2, 1956, agents of the Division visited the principal office of the corporation in Philadelphia and received permission to examine certain of the corporate records. The government agent in charge was informed that Oscar was in Europe and that only a temporary secretary was in the New York office of the corporation. The following day the agents returned to the Philadelphia office and, simultaneously, other government agents appeared in the New York office. Certain records were taken by the agents from the files of the New York office, but whether they received permission from the temporary secretary to do so is in dispute. In any event, the secretary telephoned the Philadelphia office and after some telephone discussion between the agents and the Wagman corporate officers there, the agents in the New York office were instructed to discontinue their examination, but to set aside and seal the records which they had removed from the files. This was done. The records taken were sealed in a shopping bag, and the sealed bag was left in the Wagman office. The Wagmans were informed that it would be unlawful to break the seal. By agreement of the parties these records so set aside and sealed were examined by the District Court at the time the petition was heard, and the court then found that all were corporate records and all belonged to the corporation.

After Oscar returned from Europe his attorney notified the Division in September that he considered the conduct of the agents on August 3 illegal and that the sealed shopping bag would not be turned over to the Division. There was no objection, however, to turning over other papers belonging to the corporation. On February 11, 1957 the Division issued the "Order to Make Records Available for Examination" which the appellants then moved to quash. Under the Order, the pertinent portions of which are set

forth in the margin,[1] Oscar and the corporation were directed to produce for inspection all records relative to transactions engaged in by either of them since December 17, 1950 that were subject to Section 5(b) and the regulations promulgated thereunder. Special reference was made to the records set aside and sealed on August 3, 1956 and to all records pertaining to dealings on and after January 1, 1953 with de Muinck & Co. and with T. S. Simms & Co., Ltd.

The District Court modified the administrative order so as only to require the production of records relating to the specified transactions with de Muinck & Co. and with T. S. Simms & Co., Ltd. and, as thus modified, enforced the order to produce.[2] Other records obtained by the agents on August 3, 1956 and sealed by them were ordered returned to petitioners with the direction that they should be made available for examination by the agents of the Foreign Assets Control.

In the District Court and on appeal the parties primarily raise the issue of the legality of the agents' conduct on August 3. The District Court held that the records taken from the corporation's files were "public or quasi-public records" and that an examination of them by duly authorized government agents under the circumstances present here is not violative of the Fourth Amendment prohibiting unreasonable searches and seizures. We hold that this determination was unnecessary and do not affirm it for we believe that the events of August 3 are not relevant to the disposition of appellants' motion.

The authority of the Foreign Assets Control Division to require production of documents relative to transactions covered by Section 5(b) and the regulations promulgated thereunder is clear. Consequently, unless the documents required to be produced by the order of the District Court are privileged or otherwise immune from the normal reach of proc-

1. "Pursuant to Section 5(b) of the Trading with the Enemy Act, as amended, and Sections 500.601 and 500.602 of Chapter V of Title 31 of the Code of Federal Regulations, 31 CFR 500.601, 500.602, You and Each of You Are Hereby Required to Produce and Make Available:

"The record within your custody or control, including all books of accounts, contracts, letters, memoranda or other papers relative to all transactions subject to the provisions of this Chapter engaged in by you and each of you on or since December 17, 1950 and relative to any property in which any foreign country or any national thereof has or has had any interest of any nature whatsoever, direct or indirect, on or since said date;

"Including particularly those records which were selected from your files on August 3, 1956 by Treasury representatives and set aside by mutual consent;

"And with specific reference to all dealings in Chinese hog bristles which you and each of you had with de Muinck & Co., Handelmatschappij N.V., Amsterdam, The Netherlands and with T. S. Simms & Co., Limited, Saint John, New Brunswick, Canada on and after January 1, 1953.

"All of the foregoing documents and papers are required to be produced at Room 6, United States Court House, Foley Square, New York, N. Y., on the 27th day of February, 1957, at 10 o'clock A.M."

2. The pertinent portion of the District Court's order provides:

"(5) That the said 'Order to Make Records Available for Examination' is modified so as to include only the records, books of account, contracts, letters, memoranda or other papers relative to dealings in China hog bristles which Oscar Wagman individually and N. Wagman & Company, Incorporated, had with de Muinck & Co., Handelmatschapoij N.V., Amsterdam, The Netherlands, and with T. S. Simms & Co., Limited, Saint John, New Brunswick, Canada, on and after January 1, 1953; said records to be produced in Room 6, United States Court House, Foley Square, New York, N. Y., as required by the original 'Order to Make Records Available for Examination,' within five days after the service upon petitioners of the Order herein.

"And It Is Further Ordered

"That the remaining records which do not relate to dealings with de Muinck and Simms and which were selected from petitioners' files on August 3, 1956 and set aside by mutual consent need not be produced, but shall be returned to petitioners with the direction that they shall be made available for examination by the agents of the Foreign Assets Control."

ess, the appellants' motion was properly denied.

■■ We turn first to consideration of the issues raised by the order insofar as it requires the production of the corporation's documents. At the outset it is clear that with respect to these documents neither the corporation nor Oscar can claim the benefit of the privilege against self-incrimination. Curcio v. United States, 1957, 354 U.S. 118, 77 S. Ct. 1145, 1 L.Ed.2d 1225; Hale v. Henkel, 1906, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652; Wilson v. United States, 1911, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771. The appellants contend, however, that the conduct of the agents on August 3 constituted an illegal search and seizure, and hence that the Government cannot require the production of documents allegedly seized unlawfully on that date.[3] This contention is untenable.

To be sure, in Silverthorne Lumber Co. v. United States, 1920, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319, the Supreme Court held that a subpoena could not properly issue to require the production of documents knowledge of which had been acquired for the first time by federal agents during the course of an illegal search and seizure. The basis for the Silverthorne decision is that effective implementation of the Fourth Amendment requires that knowledge illegally obtained by federal agents shall not in any way be used at a later time by the Government. But, as the Court there stated, "this does not mean that the facts thus obtained become sacred and inaccessible. If knowledge of them is gained from an independent source they may be proved like any others. * * *" 251 U.S. at page 392, 40 S.Ct. at page 183.

In the present case the documents required to be produced by the order of the District Court are not "tainted" by the

alleged illegal search and seizure. The Government's knowledge of them was not acquired initially by the agents on August 3, 1956, but was obtained from the affidavit made by Oscar Wagman on May 19, 1954, in which he set forth the transactions which the Foreign Assets Control was later investigating. Thus the question of whether or not the conduct of the agents on August 3 constituted an illegal search and seizure has no bearing on the right of the Government to inspect the undestroyed corporate records of the corporate transactions with de Muinck and T. S. Simms. Unquestionably such records may be inspected by the Government.

Appellants also urge that the administrative order was unreasonably broad. Since the order was modified by the court below to include only documents relating to the specified transactions with de Muinck & Co. and T. S. Simms & Co., Ltd., there is no merit to this assertion upon this appeal. Cf. Wilson v. United States, supra. In accordance with its modification of the administrative order, the District Court directed that the corporate records which were set aside and sealed on August 3 and that do not relate to transactions with de Muinck and T. S. Simms shall be returned to appellants. The only qualification to an unconditional return is that appellants are directed to hold the returned records available for examination by agents of the Division. As there is no indication whether agents of the Division will attempt to inspect the returned records we need not consider this portion of the district court's order at this time. If such an attempt is made, then the legality of the agents' conduct on August 3 may be in issue,[4] but it is not in issue now.

■ Apart from the claims of the corporate appellant, the individual appellant,

---

3. It should be noted that even if appellants' contention were correct, which it is not, the administrative order could not properly be quashed *in toto*, but only modified so as to exclude the records it is alleged were unlawfully seized on August 3.

4. Even then the legality of the agents' conduct on August 3 will be in issue only if the records sought are within the knowledge of the Division because of the agents' August 3 activities. Silverthorne Lumber Co. v. United States, supra.

Oscar Wagman, urges that the administrative order, as modified by the district court, is violative of his privilege against self-incrimination insofar as it requires, in addition to the production of corporate books and papers, the production by him of all his personal "records, books of account, contracts, letters, memoranda or other papers" relating to transactions with de Muinck & Co. and T. S. Simms & Co., Ltd. Examination of the record indicates that an adequate foundation has not been laid to enable the district court, or this court upon appeal, to pass upon the claim of privilege. Hence we believe that a remand is necessary.

■ It would seem clear that Oscar has reasonable grounds to apprehend that among the documents called for there may be some that may tend to incriminate him, for the purpose of the administrative order is to obtain detailed information concerning transactions which government officers have on several occasions suggested were illegal. Therefore, if this were an ordinary case the claim of privilege by Oscar in the motion to quash would have been sufficient to obtain for him the protection of the Fifth Amendment. Cf. Ballmann v. Fagin, 1906, 200 U.S. 186, 26 S.Ct. 212, 50 L.Ed. 433; 8 Wigmore on Evidence § 2271 (3rd ed. 1940). Here the Government contends, however, that the records sought are "public or quasi-public" records as to which the protection of the Fifth Amendment does not extend. See Shapiro v. United States, 1948, 335 U.S. 1, 68 S.Ct. 1375, 92 L.Ed. 1787. On the record before us we cannot determine the exact nature of the documents in Oscar Wagman's possession that he is ordered to make available for examination. He insists that their exact content is immaterial, for he seeks a ruling by us that *no* records required to be kept by the regulations promulgated under Section 5(b) are "public or quasi-public" records. We are unwilling to so rule.

Since there is no indication in the record that the relevant documents in Oscar's possession are of the kind required to be kept by the regulations, a determination by us of whether records required to be kept by the regulations are public records might well contravene the established policy of the federal courts not to "anticipate a question of constitutional law in advance of the necessity of deciding it." Liverpool, N. Y. & P. S. S. Co. v. Emigration Commissioners, 1885, 113 U.S. 33, 39, 5 S.Ct. 352, 355, 28 L.Ed. 899; see, also, Ashwander v. Tennessee Valley Authority, 1936, 297 U.S. 288, 346–347, 56 S.Ct. 466, 80 L.Ed. 688 (Brandeis, J., concurring). Thus far the District Court has only had before it papers it has affirmatively found to have been corporate files and records. Wagman v. Arnold, supra, 152 F.Supp. at page 642. Consequently, we think that it is necessary for the cause to be remanded in order that the district court may ascertain what type or kind of personal documents Oscar Wagman may have in his possession so that the district court then may determine whether its order of September 18 infringes upon his rights under the Fifth Amendment.

The order of the District Court is affirmed insofar as it directs production of the records of the corporate appellant relating to transactions with de Muinck and T. S. Simms. Insofar as the order directs that the other corporate records not relating to the de Muinck and Simms transactions that were sealed on August 3, 1956 be kept for examination, it is affirmed only to the extent that they be not destroyed, and this affirmance is without prejudice to the corporation in the event it shall desire to challenge whatever later examination the Government may seek to make. The portion of the order that directs production of the personal records of the appellant Oscar Wagman is reversed, and as to it the cause is remanded for further proceedings consistent with this opinion.